## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ELLA MADANELA DWI MUSTIKA, et al,

          Plaintiffs

       v.

HONEYWELL, INTERNATIONAL,

          Defendant

No. 08 CV 2178

Judge Guzman

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR CONSOLIDATION AND REASSIGNMENT

Defendant moves to consolidate this action with certain consolidated State court actions brought by some, but not all, of these plaintiffs against another defendant and removed to this Court by that defendant. That removed action, *Sumiati v Hamilton SundstrandCorp.,* No. 08 CV 3289, has been assigned to Judge Hibbler.

Plaintiffs in the *Sumiati* action filed a motion to remand on June 9, 2008 and noticed that motion for presentment to Judge Hibbler on June 12 at 9:30 a.m., giving notice to defendant's counsel on that date. Despite having such notice of the motion to remand set before Judge Hibbler for June 12 at 9:30 a.m., this same defense counsel filed this motion to consolidate on June 10 and set that motion for presentment to this Court on the exact date and time of the pending motion to remand before Judge Hibbler.

Plaintiffs' counsel begs the Court's indulgence as counsel may not be able to physically be present before the Court in response to this motion to consolidate as

counsel is required to appear before Judge Hibbler at the same date and time. Counsel

respectfully requests that the Court consider this Memorandum in Opposition to

Defendant's Motion to Consolidate.

## ALL THE CONDITIONS FOR REASSIGNMENT ARE NOT MET AS THE CASES ARE NOT SUSCEPTIBLE OF DISPOSITION IN A SINGLE PROCEEDING

Local Rule 40.4 states that each of four conditions must be met before a case may

be reassigned to the calendar of another judge. The fourth such condition is "(4) the cases

are susceptible of disposition in a single proceeding." LR 40.4(b)(4). The two cases

which defendant seeks to consolidate and reassign to this Court are not susceptible of

disposition in a single proceeding.

The subject *Mustika* action already pending before this Court is properly brought

before this Court under federal diversity of citizenship jurisdiction. This case will involve

discovery and, ultimately, trial in this Court. In contrast, the consolidated State court

actions in *Sumiati* were improperly removed to this Court under section 1441(e)(1) based

upon section 1369. Section 1369, however, only applies to actions arising from certain

accidents occurring 90 days or more from the effective date of section 1369 on November

2, 2002. The air crash which is the subject of the removed actions occurred 5 years prior

thereto on September 26, 1997. Defendant also untimely removed the consolidated State

court actions in *Sumiati* years after the time allowed for doing so had expired. (See

Plaintiffs' Motion to Remand and Memorandum In Support attached hereto as Ex A).

Therefore, plaintiffs submit that the removed *Sumiati* actions should be promptly

remanded, whereas the *Mustika* action should proceed through the usual litigation

process. The two cases are not susceptible of disposition in a single proceeding and a

required condition for reassignment under LR 40.4 has not been met.

Plaintiffs therefore respectfully submit that defendant's motion should be denied.


s/Floyd A. Wisner

_____

Floyd A. Wisner
Wisner Law Firm
934 S 4th St
St Charles, IL 60174
1-630-513-9434
1-630-513-6287 (fax)


## Certificate of Service

The undersigned attorney certifies that he served this Memorandum upon all
counsel of record via ECF on June 10, 2008.


s/ Floyd A. Wisner

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MRS, SUMIATI, et al,

      Plaintiffs

v.                        No.

HAMILTON SINDSTRAND CORP., et al,

      Defendant           Judge

## PLAINTIFFS' MOTION TO REMAND AND
## FOR ATTORNEYS' FEES

Plaintiffs Mrs. Sumiati, et al, through their attorney, Floyd A. Wisner, move the

Court, pursuant to 28 U.S. C. section 1447, for an Order remanding these consolidated

actions to the Circuit Court of Cook County, Illinois and awarding plaintiffs their

attorneys' fees for bringing this motion. Defendant improperly removed these

consolidated actions under 28 U.S. C. 1441(e)(1) when these consolidated actions were

not removable under either sub-section of 1441(e)(1).

These actions were not removable under 28 U.S. C. section 1441(e)(1)(A)

because these actions could not have been brought under 28 U.S.C. section 1369, the

Multiparty, Multiforum Jurisdiction Act (MMJA). The MMJA only applies to actions

arising from "accidents" occurring after a date 90 days from the effective date of the

MMJA on November 2, 2002. The air crash from which these consolidated actions arise

occurred on September 26, 1997.

These consolidated actions also were not removable under 28 U.S.C. section 1441(e)(1)(B) as this defendant Hamilton Sundstrand is not a party to an action already pending in this federal district court which is or could have been brought under the MMJA in a U.S. district court. First, the other action upon which defendant bases its removal of these actions, *Mustika v Honeywell Int'l,* no. 08 C 2178, is only brought against Honeywell, Int'l. The defendant is these consolidated actions, Hamilton Sundstrand Corp., is an independent, unrelated corporation and it is not a defendant in the federal *Mustika* action. Second, the *Mustika* action is not, and could not have been, brought under the MMJA against any entity because, as stated above, the air crash from which that action arises occurred years before the effective date of the MMJA.

Defendant's improper removal of these actions also is untimely under section 1446 because this notice of removal was filed *years* after defendant's receipt of the initial pleadings in those actions. (The notice of removal was even filed more than 30 days after plaintiffs filed their Complaint against the independent, separate corporate defendant Honeywell in the *Mustika* action).

Plaintiffs further seek an award of their attorneys' fees under section 1447(c) for bringing this Motion.

Plaintiffs support their accompanying Memorandum In Support of Plaintiffs' Motion to Remand.

s/ Floyd A. Wisner

_____

Floyd A. Wisner
Wisner Law Firm
934 S 4th St
St Charles, IL 60174
1-630-513-9434
1-630-513-6287 (fax)

## Certificate of Service

The undersigned attorney certifies that he served a copy of Plaintiffs' Motion to Remand upon all counsel of record by ECF on June 9, 2008.

s/Floyd A. Wisner

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MRS. SUMIATI, et al,

      Plaintiffs

v.                                                         No. 08 CV 03289

HAMILTON SUNDSTRAND CORP.,           Judge Hibbler

      Defendant                              Magistrate Judge Nolan

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND AND FOR ATTORNEYS' FEES

Defendant Hamilton Sundstrand has improperly and untimely removed these consolidated state court actions, the first of which was brought against it 4 years ago, based upon a complaint brought two months ago in this district court by some, but not all, of the same plaintiffs against a completely separate, unrelated defendant, alleging a different theory of liability. An explanation of the different actions therefore is appropriate.

### The Removed State Court Actions

Nine wrongful death actions were filed in the Circuit Court of Cook County, Illinois, on behalf of 82 of the persons killed in the crash of Garuda Indonesia Flight GA 152 on September 26, 1997, against Hamilton Sundstrand Corp., which is the only defendant to these actions. The earliest of these lawsuits, *Slater v Hamilton Sundstrand,* No. 04 L 2545, was filed on March 4, 2004, while the latest, *Siregar v Hamilton Sundstrand,* No. 07 L 6356, was filed on June 20, 2007.

In each of the complaints, plaintiffs allege defendant Hamilton Sundstrand defectively and negligently designed, manufactured, assembled and sold a Ground Proximity Warning System (GPWS) which was installed on the accident aircraft being operated by Garuda as Flight GA 152. Plaintiffs allege that defendant Hamilton Sundstrand's GPWS was defective in several respects, that it failed to give the flight crew of the accident aircraft adequate warnings of approaching terrain, and as the proximate result thereof, the aircraft was caused to crash and plaintiffs' decedents were killed.

Plaintiffs' complaints against defendant Hamilton Sundstrand therefore are for strict product liability and negligence arising from Hamilton Sundstrand's design, manufacture and sale of the GPWS. This GPWS was manufactured by Hamilton Sundstrand on December 22, 1980 (Exhibit A) and sold to the aircraft manufacturer in February 1981 (Exhibit B).

These actions have been consolidated and assigned to Judge Irwin Solganick of the Circuit Court of Cook County, Illinois. The parties have been litigating these consolidated actions in the Circuit Court for several years. Defendant Hamilton Sundstrand has taken lengthy depositions of app. 41 plaintiffs and all 82 plaintiffs have answered interrogatories and produced all their damages documents to defendant. Judge Solganick has entered an Order, requiring that all non-expert liability and fact discovery be completed by October 31, 2008.

The Court also had ordered defendant Hamilton Sundstrand to respond to long-outstanding written discovery from plaintiffs on liability by June 22, 2008. In addition, plaintiffs have pending motions to compel defendant Hamilton Sundstrand to produce

witnesses for deposition by plaintiffs. Those motions were set for a hearing before Judge
Solganick on July 2, 2008.

## The Federal Court Action Against Defendant Honeywell, International

On April 16, 2008, fifty-five plaintiffs filed a lawsuit in the U.S. District Court
against Honeywell, International, *Mustika v Honeywell, International,* No. 08 CV 02178.
Forty-nine of the plaintiffs in *Mustika* are among the 82 plaintiffs in the consolidated
removed actions. The remaining 33 plaintiffs in the state court actions are not plaintiffs in
this federal court action.

Honeywell is the only defendant in the *Mustika* action. Hamilton Sundstrand, the
only defendant in the state court actions, is not a defendant in *Mustika.* Honeywell and
Hamilton Sundstrand are two separate, independent companies. They are not related to
each other in any way.

In July 1993, Hamilton Sundstrand, then known as Sundstrand Co., sold its
Sundstrand Data Control (SDC) division to Allied Signal, Inc., which later became
known as Honeywell, Int'l. (Ex C). SDC was the Sundstrand division which designed and
manufactured the GPWS. After Hamilton Sundstrand sold SDC to Honeywell, Hamilton
Sundstrand went out of the business of designing, manufacturing and selling GPWS',
(although Hamilton Sundstrand continues to conduct other types of business, as a part of
United Technologies Corp). After Honeywell's purchase of SDC, Honeywell designed,
manufactured and sold GPWS' through the former SDC.

In their Complaint against Honeywell, plaintiffs allege that, after its 1993
purchase of SDC, Honeywell assumed responsibility for providing customer service and
advice for products sold by SDC, including the subject GPWS. Plaintiffs allege that

Honeywell, through its employees who formerly were employees of SDC, knew as of the date of its purchase of SDC in 1993 that the GPWS was defective and unreasonably dangerous. Plaintiffs further allege that subsequent to July 1993, defendant Honeywell acquired additional knowledge of the defective and unreasonably dangerous condition of the GPWS. Plaintiffs allege that Honeywell owed a duty to warn of the dangers of the GPWS and to advise as to necessary modifications to this product, that Honeywell negligently breached this duty and that, as the proximate result thereof, the subject aircraft crashed and plaintiffs' decedents were killed.

Plaintiffs' Complaint in *Mustika*, contrary to the misstatement to the Court by defendant in its Notice of Removal, is not derivative in nature, as based upon the acts of Hamilton Sundstrand under a theory of successor liability. Instead, it is based upon Honeywell's own breach of an independent duty to warn. *Clark Equipment co. v Dial Corp.*, 25 F.3d 1384 (7th Cir. 1994) (buyer which now services the products of seller has duty to provide the warnings seller would have given, had it remained in that business).

Thus, whereas the complaints of those plaintiffs in the state court actions are based upon defendant Hamilton Sundstrand's defective and negligent design, manufacture and sale of the GPWS in 1980-81, the complaint of the *Mustika* plaintiffs in the federal court action are based upon Honeywell's negligent failure to warn and advise subsequent to July 1993.

## DEFENDANT IMPROPERLY REMOVED THESE ACTIONS

Defendant improperly removed these consolidated State court actions under section 1441(e)(1) which provides:

> (e)(1)...[A] defendant in a civil action in a State Court
> may remove the action to the district court of the United

States...if
> (A) the action could have been brought in a United
> States district court under section 1369 of this title;
> or
> (B) the defendant is a party to an action which is or
> could have been brought...under section 1369 in a
> United States district court and arises from the same
> accident as the action in State court...

Defendant fails to state in its Notice of Removal upon which of the above sub-

sections of 1441(e)(1) it bases its removal. However, this is of no matter as these

consolidated actions are not removable under either subsection of 1441(e)(1).

## Defendant Improperly Removed These Actions Under 1441(e)(1)(A)

Defendant improperly removed these consolidated State court actions under

1441(e)(1)(A) because these State court actions could not have been brought in a United

States district court under section 1369. Section 1369, known as the Multiparty,

Multiforum Jurisdiction Act (MMJA) was enacted November 2, 2002. P.L. 107-273, Div.

C, Title I, Subtitle A, sec. 11020(b)(1)(A), 116 Stat. 1826.  The Act Nov. 2, 2002

specifically provides:

> The amendments made by subsection (b) [adding 28
> USC secs 1369, 1697, and 1785, and amending 28
> USC secs 1391 and 1441] shall apply to a civil action
> if the accident giving rise to the cause of action occurred
> on or after the 90th day after the date of the enactment of
> this Act.

Therefore, the MMJA only applies to actions arising from accidents occurring 90

or more days from the date of enactment of the Act on Nov, 2, 2002, or on or after Feb. 2,

2003. These consolidated actions arise from an air crash which occurred on Sept. 26,

1997, more than 5 years prior to the enactment of this Act. Defendant's removal under

1441(e)(1)(A) therefore was improper.

**Defendant Improperly Removed These State Court Actions Under 1441(e)(1)(B)**

Defendant Hamilton Sundstrand also improperly removed these actions under 1441(e)(1)(B) because defendant Hamilton Sundstrand is not "a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court…" Section 1441(e)(1)(B) "is often described by the courts as establishing piggy-back jurisdiction." *Case v Anpac Louisiana Ins. Co.,* 466 F.Supp.2d 781, 785 (E.D. La. 2006). Section 1441(e)(1)(B), therefore, "must be read in tandem with section 1369" and "the removing party must show that there is a pending action [to which the removing party also is a defendant] which is or could have been brought, in whole or in part, under section 1369." *Id.* at 786.

Defendant Hamilton Sundstrand completely fails to establish piggy-back jurisdiction under 1441(e)(1)(B) for at least two reasons. First, defendant Hamilton Sundstrand is not a party to the *Mustika* action to which it seeks to piggy-back. The only defendant in the *Mustika* action is Honeywell Int'l, a separate, independent company. Section 1441(e)(1)(B) clearly provides that the removing defendant must be a *party* to a pending action.

Second, as discussed, the *Mustika* action is not brought, and could not have been brought, under section 1369. Plaintiffs brought their Complaint in *Mustika* under section 1332, the diversity of citizenship statute. Plaintiffs could not have brought their action under section 1369 because that Act only applies to actions arising from accidents occurring on or after 90 days from the enactment of the Act on Nov. 2, 2002. The

*Mustika* action arises from an air crash which occurred more than 5 years prior thereto on Sept. 26, 1997.

Because the *Mustika* action is not brought, and could not have been brought, in this district court under section 1369, defendant Hamilton Sundstrand's removal of these consolidated State court actions under section 1441(e)(1)(B was improper. *See The Plant Gallery, Inc. v Hanover Ins. Co.,* 2007 U.S. Dist, LEXIS 3432 (att. 1) (court could not exercise piggy-back jurisdiction under 1441(e)(1)(B) because the pending district court action was not brought, and could not have been brought, under 1369 as the subject cause of plaintiff's damages, Hurricane Katrina, was not an "accident" under sec. 1369)

### DEFENDANT'S REMOVAL OF THESE ACTIONS WAS NOT TIMELY

Plaintiffs also submit that these consolidated State court actions should be remanded because defendant did not timely file its Notice of Removal. The removal statutes are to be strictly construed, with all doubts resolved against removal. *Doe v Allied Signal, Inc.,* 985 F.2d 908 (7th Cir. 1993). Specifically, defendant must comply with all of the procedural requirements for removal. *Keys v Conrath,* 1994 U.S. Dist. LEXIS 2814 (N.D. Ill. 1994) (att. 2); *Crum & Forster Managers Corp. v Carney,* 1988 U.S. Dist. LEXIS 3325 (N.D. Ill. 1988) (att. 3). Any defect in the removal will require remand and, again, any doubts about compliance are to be resolved in favor of remand. *Crum & Forster, supra.*

Section 1441(e)(1) provides for removal under that section as follows:

> The removal of an action under this subsection
> shall be made in accordance with section 1446
> of this title, except that a notice of removal may
> also be filed before trial of the action in State court
> within 30 days after the date on which the defendant
> first becomes a party to an action under section 1369

in a United States district court…

As the Court is well aware, section 1446 requires that a notice of removal be filed "within thirty days after the receipt by the defendant through service or otherwise" of a removable complaint. 28 U.S.C. sec. 1446. Defendant was served with the first of the consolidated State court actions in 2004, more than 4 years prior to its removal. It could have removed at that time, based upon diversity of citizenship, but chose not to do so. If defendant truly believes that section 1369, despite the clear language of the enacting legislation, applies to these actions arising from this 1997 air crash, defendant also could have removed these consolidated actions within 30 days of service under 1441(e)(1). Again, it did not do so. Defendant's removal of these consolidated State court actions more than 4 years later does not comply with the requirements of section 1446, as incorporated by section 1441(e)(1).

The exception to section 1446 compliance referred to in 1441(e)(1) is not applicable to this untimely removal by defendant Hamilton Sundstrand. The exception allows a notice of removal to be filed "within 30 days after the date on which the defendant first becomes a party to an action under section 1369…" 28 U.S.C. sec. 1441(e)(1). As discussed, defendant Hamilton Sundstrand is not a party to any action under section 1369.[1] It is not a defendant to the *Mustika* action and the *Mustika* action is not brought under 1369. [2]

---

[1] The Court will note that this exception to the 1446 removal period in sec. 1441(e)(1) does not use the language "an action which is, *or could have brought,* under 1369." Instead, it requires that the other pending action *actually was* brought under 1369. Regardless whether the *Mustika* action could have been brought under 1369 (and plaintiffs maintain it could not have been), it certainly was not in fact brought under 1369. Therefore, the exception to the 1446 removal period does not apply.

[2] Even if defendant Hamilton Sundstrand was a defendant to the *Mustika* action, its removal would be untimely under this exception because the *Mustika* complaint was filed on April 15, 2008 and defendant filed this notice of removal more than 30 days later on June 6, 2006.

Defendant's failure to comply with the requirements for timely removal is not a mere technicality which may be excused. The removal requirements are mandatory, *Fellhauer v City of Geneva,* 673 F.Supp. 1445, 1447 (N.D. Il. 1987), and a failure to comply with those requirements may not be cured by amendment, *Hardesty v General Foods Corp.,* 608 F.Supp.2d 992 (N.D. Il. 1985) or extended even by an Order of this Court. *Crum & Forster, supra.*

### THESE CONSOLIDATED STATE COURT ACTIONS MAY NOT BE REMOVED MERELY FOR PURPOSES OF CONSOLIDATION

Defendant Hamilton Sundstrand argues that its untimely removal of these consolidated actions should be allowed because that is the only way to have these related cases heard in a single forum. However, that is not grounds for federal removal jurisdiction. The Seventh Circuit has held that the fact "a related case was pending in federal court was not in itself sufficient grounds for removal under 28 U.S.C. sec. 1441." *Fabricius v Freeman,* 466 F.2d 689, 693 (7th Cir. 1972). Sections 1369 and 1441(e)(1) have created a limited exception to that general rule, but these consolidated State court actions do not fall within that piggy-back jurisdiction for all the reasons stated above.

Federal courts are courts of limited jurisdiction and "a federal court's jurisdiction under the removal statutes constitutes an infringement upon state sovereignty," *Fellhauer v City of Geneva,* 673 F.Supp.1445, 1447 (N.D. Il. 1987), *citing Shamrock Oil Corp. v Sheets,* 313 U.S. 100, 108-09 (1941). It is for this reason that the burden of proof on this motion to remand is not on plaintiffs, but on defendant as the party seeking federal jurisdiction through its untimely removal of these consolidated state court actions.

Removal statutes, such as 1441(e)(1), must be strictly construed and any doubts must be resolved against removal. *Doe v Allied Signal, Inc.,* 985 F.2d 908 (7th Cir. 1993).

These consolidated State court actions were not removable and now should be remanded.

## PLAINTIFFS SHOULD BE AWARDED ATTORNEYS' FEES

Section 1447 states that "an order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of removal." 28 U.S. C. sec. 1447(c). In *Garbie v Daimler Chrysler Corp.,* 211 F.3d 407 (7th Cir. 2000), the Seventh Circuit held that attorneys' fees should be normal incidents of remands for lack of jurisdiction. Plaintiffs submit that an award of attorneys' fees is even more justified here where defendant's removal is so devoid of any legal basis that it could be said to be in violation of Rule 11. Plaintiffs request an award of their attorneys' fees in obtaining a remand of these actions.

s/Floyd A. Wisner

_____

Floyd A. Wisner
Wisner Law Firm
934 S 4th St
St Charles, IL 60174
1-630-513-9434
1-630-513-6287 (fax)

## Certificate of Service

The undersigned attorney certifies that he served a copy of this Memorandum upon all counsel of record via ECF on June 9, 2008.

s/Floyd A. Wisner

# EXHIBIT A

## Bateman, C. Don

| | |
|---|---|
| **From:** | Ward, Wally |
| **Sent:** | Monday, January 11, 1999 2:01 PM |
| **To:** | 'Yann Pihan' |
| **Cc:** | Bateman, C. Don |
| **Subject:** | GPWS warnings simulation - Accident A300 PK-GAI, Medan 07-26-1997 |
| **Importance:** | High |

Dear Mr. Pihan

Thank you for your e-mail of last week clarifying the Serial Number of the reference GPWC. Our Serial Number data base shows that a MK-II P/N 965-0476-088 with that Serial Number was manufactured on 12-22-1980. This should have originally made it a Mod Dot 8 version. Our repair records do not show that this unit has ever been here to Redmond, Washington for repair. Who does Garuda use for repair of their GPWC's? Can they tell us when this unit was last repaired, and what the Modification Status was at that time? Our simulation shows a slight difference in the "Terrain-Terrain" warning described below for a unit with Mod Dot 17 and above.

Our initial GPWS simulation, after removing the 'out-of-track' Radio Altimeter condition, shows that a "Terrain-Terrain" warning should have occurred at 14.28 seconds. This would have been followed by a single "Whoop-Whoop Pull-Up" warning at 12.68 seconds, and then "Terrain" warnings every 1.5 seconds until impact. This warning sequence is caused by the change in Radio Altitude after the peak value of 1007.6 feet at 21.0 seconds.

Without this GPWC Mode 2 warning, there would have been repetitive "Too Low Gear" warnings beginning at 5.82 seconds when the Radio Altitude first goes below the value of 500 feet. This condition appears to correlate with the tabular data you initially supplied to Mr. Bateman, where the GPWS 'Pull-Up' light comes on at -5 seconds, and lasts until the Radio Altitude goes above 500 feet when 'out-of-track' at 0 seconds.

It is not clear why the GPWS 'Pull-Up' light comes back on at (+)4 seconds, when the Radio Altitude indicates -20.0 feet for 0.0VDC output, as all GPWC outputs are normally inhibited below 50 feet.

Can you determine the exact GPWC warning messages that should have been on the Cockpit Voice Recorder while the GPWS 'Pull-Up' light was on?

I will await your reply on the Cockpit Voice Recorder information before continuing with our warning simulation,

Wally Ward

6724

# **EXHIBIT B**

Wilson v Sundstrand Corporation                                                    Don Bateman

Page 33

1  Q    Did Mr. Barnett tell you that the FDR and CVR were
2       recovered?
3  A    I think in his e-mail in March, I think he had -- if I
4       recall, it says that they were recovered.
5  Q    Okay. Did you ever see a transcript of the CVR
6       recording?
7  A    No.
8  Q    Am I correct that you had someone do a translation of
9       part of the CVR transcript?
10 A    There is no way of knowing really whether that was the
11      CVR transcript, and let me explain. I mentioned the
12      engineer, Yasuo Ishihara, his father had sent him a
13      Japanese -- a clipping from a Japanese newspaper, and
14      so we transcribed that and that's all I had to work
15      with.
16 Q    Okay. And that clipping from the Japanese newspaper
17      purported to set forth a part of the CVR transcript?
18 A    Yes.
19 Q    Okay.
20 A    Again, I don't know if it's the CVR, or it could have
21      been the transcript between air traffic control. I
22      don't recall, but air traffic control and the aircraft
23      who -- I can't recall.
24 Q    Okay. Did representatives of Sundstrand come to
25      Allied to review documents relevant to this crash?

Page 34

1  A    No.
2  Q    Did you obtain charts or maps of the site of this
3       crash?
4  A    Yes.
5  Q    What type?
6  A    Topographical -- two forms: topographical charts and
7       digital terrain data.
8  Q    Okay. And from what sources?
9  A    The topographical charts are from Russia.
10 Q    And in what scale did you obtain them?
11 A    Typically, one in 250,000.
12 Q    For both?
13 A    Yeah. I cannot attest for the terrain data, but it
14      started with, as it says on this exhibit here, DCW
15      data.
16 Q    Now, Mr. Bateman, is it your belief that a Sundstrand
17      Mark II GPWC was on the Garuda Flight 152 at the time
18      of this crash?
19      MR. DeYOUNG: I object to the question.
20      Lack of foundation.
21 Q    You can answer subject to that objection.
22 A    I really don't know. It's probable, but I don't know.
23 Q    Okay. And you say "it's probable." What is your
24      basis for saying "it's probable"?
25 A    Well, we know that Airbus was who had assisted in

Page 35

1       responsibility for installing GPWS, putting a system
2       on there, A300s had purchased units, and we were a
3       predominant manufacturer of that equipment kind of
4       thing.
5  Q    Okay.
6       MR. WISNER: Can we take one minute? I
7  need to find a document that I misplaced.
8       MR. McQUILLEN: Take your time.
9       (Off the record)
10      (Exhibit No. 2 marked for identification)
11 Q    Mr. Bateman, I'll show you what has been marked as
12      Bateman Exhibit No. 2. Can you identify that, please,
13      as an e-mail from our own Debbie Pederslie to Glen
14      Hallman regarding Garuda GPWS, memo dated Monday,
15      January 11th, 1999? Is that correct, sir?
16 A    That's what I can read here, yes.
17 Q    Okay. And that states that MKII GPWS S/N -- and I
18      assume that refers to serial number, correct?
19 A    Yes.
20 Q    -- 2689 sold to PT Garuda. Is that what that says?
21 A    Yes.
22 Q    Do you understand that, at least according to what you
23      were told, that the Ground Proximity Warning System in
24      this accident aircraft was an MKII GPWS of that serial
25      number?

Page 36

1       MR. DeYOUNG: I'm going to object. Where
2  is the foundation for that? There is no foundation.
3  Q    You can go ahead and answer that, sir.
4  A    I don't know. I've never seen this document before.
5  Q    Okay. Do you have any reason to doubt that
6       information --
7  A    No.
8  Q    -- on this document?
9       MR. DeYOUNG: I'm going to object again.
10      You're just giving him information that he says he
11      hasn't seen before, and then the thing, Do you doubt
12      what I'm telling you.
13 Q    Do you have any reason to doubt that, sir? You can
14      answer over objection.
15 A    I have no reason to doubt it, if it's real.
16 Q    Okay.
17      (Exhibit No. 3 marked for identification)
18 Q    Mr. Bateman, I'm going to show you what's been marked
19      as Bateman Exhibit No. 3. Have you ever seen that
20      document before?
21 A    I don't know. I normally don't get invoice/packing
22      sheets. It's not an engineering kind of thing.
23 Q    In the course of your inquiry into this crash, have
24      you ever seen that document before?
25 A    No.

9 (Pages 33 to 36)



Page 37

1  Q   Am I correct that that is a Sundstrand Data Control --
2      appears to be a Sundstrand Data Control invoice?
3          MR. DeYOUNG: I'm going to object to this
4      line of questioning based on the fact that he says
5      he's never seen this document and you haven't laid a
6      foundation.
7  Q   You can answer, sir.
8  A   I assume -- this is not my -- I'm in engineering.
9  Q   Sure.
10 A   I don't have anything to do with the shipping of these
11     things. I have no doubt that this an invoice/packing
12     sheet, like it says on here, but I can't really attest
13     to anything else on it.
14 Q   All right. Based upon just looking at the first page
15     of that document, sir, does that indicate to you that
16     Sundstrand Data Control sold to Aerospatiale a product
17     with a serial number of 2689?
18 A   That's what it says. And this says February '81.
19 Q   Okay.
20         MR. McQUILLEN: The record that is stamped
21     page 6709.
22         MR. WISNER: Yeah, thanks.
23         (Exhibit No. 4 marked for identification)
24 Q   Let me show you what's been marked as Bateman Exhibit
25     No. 4, Mr. Bateman. That's bearing Bates Nos. 006705

Page 38

1      to 006707. Is the first page of that an AlliedSignal
2      document?
3  A   That's what's printed on here, yes.
4  Q   Okay. It's from Debbie Pederslie to Glen Hallman? Is
5      that what it indicates?
6  A   Yes.
7  Q   The second page of that document, Mr. Bateman -- if
8      you'll turn to that, please -- is that a serial number
9      record?
10 A   I think so. Again, none of this material ever goes
11     through engineering, that I know of.
12         MR. DeYOUNG: Same objection as before.
13 Q   Well, if you look under Serial No. 2689, the date to
14     the right of that, 12-22-80, is that a date of
15     manufacture or production?
16         MR. DeYOUNG: Again, same objection:
17     asking questions from a document that the witness said
18     he's not familiar with.
19 A   I'm not sure what it means, whether it's manufactured
20     or inspected or what. I have no idea really.
21 Q   All right. What is the inspected useful life of the
22     MKII?
23 A   Probably five years.
24 Q   Five years?
25 A   Uh-huh.

Page 39

1  Q   And was it designed to only have a useful life of five
2      years?
3  A   Yes.
4  Q   Do you have a belief, based upon your education and
5      experience, as to whether a MKII sold in 1981 would be
6      on an aircraft in 1997?
7          MR. DeYOUNG: I'm going to object to that.
8      I don't see how anybody in the world can predict what
9      is on there.
10         MR. WISNER: Bill, I appreciate your
11     objections, but I would ask you to take a look at the
12     federal rules about what objections are supposed to be
13     reserved, and it's very limited as to what you can
14     object to.
15 Q   Go ahead, sir.
16 A   We certainly design equipment for -- I don't recall
17     exactly for the Mark II, but it could be like 10,000
18     hours, sometimes 2500 hours back in these days. These
19     things were very primitive in relationship to today in
20     terms of competence, so its life might only be 2500
21     hours guaranteed.
22 Q   Okay. Do you have any knowledge of any replacements
23     of the Ground Proximity Warning System originally
24     installed on this accident aircraft?
25 A   I have no knowledge.

Page 40

1  Q   Or any revisions to it?
2  A   No knowledge.
3  Q   Or modifications?
4  A   None.
5  Q   Do you have a reasonable belief, Mr. Bateman, that the
6      Ground Proximity Warning System on this accident
7      aircraft on the day of the crash was operating at the
8      time, during the flight?
9  A   I don't know.
10 Q   Do you have any reason to believe that it was not?
11 A   Indonesia is such a variable. I don't know. I know
12     there is no rule to have GPWS in the airplanes. I
13     don't know what the maintenance requirements are;
14     there may be none. I don't know what -- I know
15     nothing about what Garuda was doing.
16 Q   Assuming that there was a GPWS in the aircraft on the
17     date of the accident flight, do you have a reasonable
18     belief as to whether it was in operating condition?
19         MR. DeYOUNG: Same objection.
20 A   I don't know what the state of the complete system
21     would be, like the Radio Altimeters, the Air Data
22     System, the other components that make up the system.
23     But it's probable that, in my mind probable anyway,
24     that if it was there, it would probably be working.
25     The equipment's very reliable. Our equipment is

10 (Pages 37 to 40)

# EXHIBIT C

STOCK, NOTE AND REAL PROPERTY PURCHASE AGREEMENT

BETWEEN

ALLIEDSIGNAL INC.

AND

SUNDSTRAND CORPORATION

DATED AS OF

JULY ___14___ , 1993

*Approved*
*Effective :*
*11/12/93*



PLAINTIFF'S
EXHIBIT
#1  5/26/99
E.B.

. . . .

STOCK, NOTE AND REAL PROPERTY PURCHASE AGREEMENT

THIS Stock, Note and Real Property Purchase Agreement made this 14th day of July, 1993, by and between AlliedSignal Inc., a Delaware corporation (hereinafter referred to as "Purchaser"), and Sundstrand Corporation, a Delaware corporation (hereinafter referred to as "Seller").

WHEREAS, Seller is the owner of one hundred percent (100%) of the outstanding shares of common stock of Sundstrand Data Control, Inc. ("SDC") and will be the owner of one hundred percent (100%) of the outstanding shares of common stock of Guidance and Control Systems, Inc., a corporation to be incorporated under the laws of the State of Delaware pursuant to this Agreement ("GCS");

WHEREAS, Seller intends to transfer to SDC, in exchange for newly issued stock of SDC and a promissory note of SDC in favor of Seller (the "Note" as further described in Section[1] 1.1.(u)), certain assets, business and properties, which are utilized primarily in connection with the business of Seller's Data Control division, which is in the business of designing, developing, manufacturing, selling and servicing avionic and instrument systems, including ground proximity and wind shear warning systems,

---

[1]All references to "Section(s)" shall mean Section(s) of this Agreement, unless otherwise indicated.

H:\JAC\DOCS\FINAL\NORTEGCS.C4
07/07/93 3:18 pm                    1

120222 000032

cockpit voice and flight data recorders, navigation and flight management systems, and communication and data management equipment, such assets not to include assets related to instrument systems, including accelerometers and thermal switches, and SDC shall assume certain liabilities related to such asset transfer and shall take over operation of such business, other than instruments system business; and

WHEREAS, Seller intends to transfer to GCS, in exchange for issuance of all of the outstanding shares of stock of GCS, certain assets, business and properties, which are utilized primarily in connection with the business of Seller's Data Control division and are related to the manufacture and sale of instrument systems, including accelerometers and thermal switches, and GCS shall assume certain liabilities related to such asset transfer and shall take over operation of such business; and

WHEREAS, Seller desires to sell and Purchaser desires to purchase all of the outstanding shares of stock of SDC and all of the outstanding shares of stock of GCS (collectively, the "Stock" as further described in Section 5.4), the Note and certain real property located in the State of Washington related to the "Business," as hereinafter defined, and thereby acquire control of the Business, subject to the terms and conditions of this Agreement.

H:\JAC\DOCS\FINAL\NORTEGCS.C4
07/07/93 3:18 pm

2

120222 000033

NOW THEREFORE, in consideration of the premises and of the mutual covenants and conditions set forth in this Agreement, Seller and Purchaser agree as follows:

## ARTICLE I

### DEFINITIONS

Section 1.1.    *Defined Terms*.   As used in this Agreement, the following terms shall be defined as set forth below:

(a)    "*Agreement*" means this Stock, Note and Real Property Purchase Agreement between AlliedSignal Inc. and Sundstrand Corporation, including all Exhibits and Schedules hereto.

(b)    "*Asset Transfer Agreements*" means both (i) that certain Asset Transfer Agreement (SDC) by and between Seller and SDC (the "Asset Transfer Agreement (SDC)"), and/or (ii) that certain Asset Transfer Agreement (GCS) by and between Seller and GCS (the "Asset Transfer Agreement (GCS)"), each to be executed and made effective the day immediately preceding the Closing Date, the forms of which are attached as Exhibits A and B hereto.

(c)    "*Assumed Liabilities*" shall mean only those liabilities incurred by Seller and specifically to be assumed by the Subsidiaries in connection with the transfer of the Business pursuant to the Asset Transfer Agreements.

H:\JAC\DOCS\FINAL\NORTHGCS.C4
07/07/93 3:18 pm                                    3

requested by Seller, Purchaser's, or the applicable Subsidiary's, confirmation of such termination of employment, Seller shall pay Purchaser $10,000 for each such terminated Employee, up to 50 Employees.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the parties hereto on the date first hereinabove written.

ALLIEDSIGNAL INC.

[Title]  Daniel P. Burnham
         Executive Vice President

SUNDSTRAND CORPORATION

Richard M. Schilling
Vice President and General
Counsel and Secretary

120222 000120

**LexisNexis** *Total Research System*

*My Lexis™* ❚ *Search* ❚ *Research Tasks* ❚ *Get a Document* ❚ *Shepard's®* ❚ *Alerts* ❚ *Total Litigator* ❚ *Transactional Advisor* ❚ C

Source: Legal > / . . . / > US District Court Cases, Combined ▣
Terms: removal w/ supplemental jurisdiction (Edit Search | Suggest Terms for My Search)
Focus: **piggy-back jurisdiction** (Exit FOCUS™)

◄Select for FOCUS™ or Delivery
☐

### *2007 U.S. Dist. LEXIS 3432, \**

⁑ View Available Briefs and Other Documents Related to this Case

### THE PLANT GALLERY, INC. VERSUS HANOVER INSURANCE COMPANY, ET AL

### CIVIL ACTION. NO: 06-7692 SECTION: "D"(2)

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

### 2007 U.S. Dist. LEXIS 3432

### January 17, 2007, Decided
### January 17, 2007, Filed

**CORE TERMS:** adjuster, insured, joined, insurance adjusters, discrete, fraudulently, claimant, breached, removal, levee, state law, diversity jurisdiction, original jurisdiction, improper joinder, misrepresentation, omission, handle, insurance claim, civil action, natural persons, substantial part, supplemental jurisdiction, independent tort, reasonable basis, apparent authority, fraudulent, undertaken, homeowner's, coverage, disclose

### ⊽**Available Briefs and Other Documents Related to this Case:**

U.S. District Court Motion(s)

**COUNSEL:** **[\*1]** For The Plant Gallery, Inc., Plaintiff: John Paul Massicot ◄, LEAD ATTORNEY, Silvestri & Massicot, New Orleans, LA.

For Hanover Insurance Company, improperly joined and fraudulently misjoined with Worley Claims Service, Defendant: Kristopher T. Wilson ◄, LEAD ATTORNEY, LaDonna Grey Wilson ◄, Ralph Shelton Hubbard, III ◄, Seth Andrew Schmeeckle ◄, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA; Kevin P. Kamraczewski ◄, Paul E.B. Glad ◄, Wendy N. Enerson ◄, Sonnenschein, Nath & Rosenthal, Chicago, IL.

**JUDGES:** A.J. McNAMARA, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** A.J. McNAMARA

**OPINION**

### ORDER AND REASONS

Before the court is the **"Motion to Remand"** filed by Plaintiff, The Plant Gallery, Inc. Defendant, The Hanover Insurance Company, ◄filed a memorandum in opposition. The motion, set for hearing on Wednesday, January 17, 2007, is before the court on briefs, without oral argument. Now, having considered the memoranda of counsel, the record, and the applicable law, the court finds that the motion should be denied.

## I. Background

In this Katrina-related matter, Plaintiff (allegedly a Louisiana corporation) initially filed suit in the Civil District Court for the Parish of Orleans, **[*2]** State of Louisiana, against its property insurer, Hanover (a foreign company), and Worley Claims Services, Inc. (allegedly a Louisiana corporation), allegedly "hired by and the agent and representative of Hanover for the purposes of adjusting plaintiffs' claim for Katrina storm damages covered by Hanover's policy. . ." (Petition at P2).

Plaintiff's specific allegations regarding Worley are contained in Paragraph 12 of Plaintiff's Petition:

12.

Defendant, Hanover sometime in the month of September [2005] sent its first claims representative, an adjuster from Worley, to plaintiff's property for purposes of inspecting and investigating the damages. On information and belief this initial adjuster did not even get out his car and after his drive-by advised plaintiff that there was Three Thousand ($ 3,000.00) Dollars worth of damage to its property. Thereafter, plaintiff through a series of correspondence and email suffered through an adjusting process with defendants, Hanover and Worley [sic] to assess and determine the damages sustained to plaintiff's property caused by the storm. Damages resulting from the cause of loss by flood is separate and apart from its coverages **[*3]** under Hanover's wind storm policy. Hanover initially denied plaintiff's claim. As a result of denial of their claim, plaintiffs retained their own experts to examine the damages to its property caused by Hurricane Katrina.

(Petition at P12).

Plaintiff initially claims that "Hanover is responsible for all allegations of fault and neglect against Worley under the doctrines of agency and respondeat superior." (Petition at P2). But later in its Petition, Plaintiff asserts:

26.

Defendant Hanover is liable for acts and omissions of its agents, employees and representatives in the handling of plaintiffs' claim. Worley Claims Service is individually liable for the acts of its agents, employees and representatives in failing to adjust plaintiffs' claim in good faith and in failing to disclose material information to plaintiffs causing further delays and damages as a result.

(Petition at P 26).

Hanover removed the matter to this court arguing that Plaintiffs fraudulently joined Worley to defeat diversity jurisdiction. Hanover alternatively removed the matter under the Multiparty, Multiforum Trial Jurisdiction Act (MMTJA), 28 U.S.C. § 1441(e)(1)(B) **[*4]** , asserting that "(1) this action involves an insurance claim flowing from Hurricane Katrina -- an accident which claimed more than 75 lives at a discrete location; and (2) Hanover is a defendant in another action pending in this Court involving similar issues, and over which the Court would have had original jurisdiction under 28 U.S.C. section 1369." (See Notice of Removal at p. 2).

In its Motion to Remand, Plaintiff argues that Worley is not fraudulently joined, thus the court lacks diversity jurisdiction. [1] Further, Plaintiff argues that there is no jurisdiction under the MMTJA. As the court next discusses, the court agrees that there is no jurisdiction under the MMTJA, but the court finds that Worley has been fraudulently (or improperly) joined.

---

## FOOTNOTES

1 There is no dispute that the amount in controversy exceeds $ 75,000.

## II. Legal Analysis

### A. The Court does not have jurisdiction under the MMTJA. [2]

#### FOOTNOTES

[2] The court notes that while Defendant asserted jurisdiction under the MMTJA in its removal papers, it has abandoned such an assertion in its opposition to Plaintiff's Motion to Remand, concentrating only on its assertion of fraudulent joinder and diversity jurisdiction.

[*5] The MMTJA provides in relevant part:

#### § 1369. Multiparty, multiforum jurisdiction

**(a) In general.--**The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if--

(1) a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

(2) any two defendants reside in difference States, regardless of whether such defendants are also residents of the same State or States; or

(3) substantial parts of the accident took place in difference States.

**(b) Limitation of jurisdiction of district courts.--**The district court shall abstain from hearing any civil action described in subsection (a) in which--

(1) the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens; and

(2) the claims asserted will be governed [*6] primarily by the laws of that State.

28 U.S.C. § 1369. [3]

#### FOOTNOTES

[3] "The MMTJA was designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora." _Wallace v. Louisiana Citizens Property Ins. Corp._, 444 F.3d 697, 702 (5th Cir. 2006). The ultimate goal of the MMTJA is consolidation. _Id._

An "accident" under § 1369 is defined as "a sudden accident, or natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 persons." 28 U.S.C. § 1369(c)(4). Here, the court does not have original jurisdiction under § 1369, because Hurricane Katrina is not an "accident" as that term is defined in the MMTJA. [4]

#### FOOTNOTES

4 *See e.g., Haas v. Lafayette Ins. Co.,* 2006 U.S. Dist. LEXIS 93652, 2006 WL 3437498, EDLA No. 06-8975, Doc. No. 6 (McNamara, J.); *Flint v. Louisiana Farm Bureau Mutual Ins. Co.,* EDLA No. 06-2546, Doc. No. 19, 2006 U.S. Dist. LEXIS 58264 (Duval, J.); *Berry v. Allstate Ins. Co.,* EDLA 06-4922, Doc. No. 8, 2006 U.S. Dist. LEXIS 70499 (Zainey, J.); *Southall v. St. Paul Travelers Ins. Co.,* 2006 U.S. Dist. LEXIS 61911, 2006 WL 2385365 (Barbier, J.); *Fidelity Homestead Ass. v. The Hanover Ins. Co.,* 458 F. Supp. 2d 276 (Berrigan, J.); *Southern Athletic Club, LLC v. The Hanover Ins. Co.,* EDLA No. 06-2605, Doc. No. 28, 2006 U.S. Dist. LEXIS 66634 (Lemmon, J.); and *Carroll v. Lafayette Ins. Co.,* EDLA No. 06-3955, Doc. No. 20, 2006 U.S. Dist. LEXIS 69334 (LeMelle, J.).

[*7] Hanover also asserts in its removal papers that the court has supplemental jurisdiction under 28 U.S.C. § 1441(e)(1)(B), because Defendant is already a defendant in multiple cases where jurisdiction is proper under the MMTJA, 28 U.S.C. § 1369. The full text of 28 U.S.C. § 1441(e)(1) provides:

> a defendant in a civil action in State court may remove that action to the district court of the United States for the district court and division embracing the place where the action is pending if--
>
> (A) the action could have been brought in the United States district court under section 1369 of this title; or
>
> **(B) the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1369 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.**

28 U.S.C. § 1441(e)(1) (emphasis added).

As the Fifth Circuit has reasoned:

> § 1441(e)(1)(B) permits removal in those situations where [*8] original federal subject matter jurisdiction does not exist . . . When the requirements of § 1441(e)(1)(B) are met, defendants need not establish the existence of independent subject matter jurisdiction under any other provision, including under § 1369(a), because supplemental jurisdiction has been established.

*Wallace,* 444 F.3d at 702. 5

**FOOTNOTES**

5 The court notes that § 1369(b) is not an independent bar to exercise of jurisdiction over a case removed pursuant to § 1441(e)(1)(B), because § 1369(b) applies only to the exercise of original jurisdiction under § 1369(a). *Wallace,* 444 F.3d at 702.

However, in this case, the court rejects Defendant's argument that this court can exercise supplemental jurisdiction under § 1441(e)(1)(B) based on the fact that Defendant is already a defendant in other actions pending in this court. To the extent that these other cases are based on Hurricane Katrina, they could not have been brought under the MMTJA because, again, Hurricane Katrina [*9] is not an "accident" as that term is defined in the MMTJA. Further, in *Chehardy,* it has been found that "§ 1369 jurisdiction exists ... because the levee break is the requisite accident that caused the death of at least 75 natural persons at a discrete location." 6

**FOOTNOTES**

**6** In _Flint v. Louisiana Farm Bureau Mutual Ins. Co.,_ No. 06-2546, Doc. No. 19, p. 7, 2006 U.S. Dist. LEXIS 58264 at 7, Judge Duval found that:

> [_Chehardy v. State Farm -Fire & Casualty Co.,_ a case transferred from the Middle District of Louisiana to the Eastern District, No. 06-1672, and now pending in Section K under lead case, No. 05-4182, _In re: Katrina Breaches Litigation_] arises from a levee break that caused both loss of life and property damage. Therefore, the Court concludes that § 1369 jurisdiction exists in _Chehardy_ because the levee break is the requisite that caused the death of at least 75 natural persons at a discrete location.

In this case, Plaintiff makes no allegation about levee breaches and Hanover presents no allegations of a **[*10]** levee breach in its removal papers or opposition memorandum. Thus, the court finds that it has no **"piggy-back jurisdiction"** under § 1441(e)(1)(B). _Wallace,_ 444 F.3d at 702.

## B. Defendant Worley was fraudulently or improperly joined. 7

### FOOTNOTES

**7** The Fifth Circuit now refers to "fraudulent joinder" as "improper joinder." _Smallwood v. Illinois Cent. R.R. Co.,_ 385 F.3d 568 n. 1 (5th Cir. 2004) _(en banc)._

There are two ways to establish fraudulent or improper joinder: (1) actual fraud in the pleading of jurisdictional facts,; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court. _Guillory v. PPG Industries, Inc.,_ 434 F.3d 303, 308 (5th Cir. 2005), _citing Smallwood v. Illinois Cent. R.R. Co.,_ 385 F.3d 568, 573 (5th Cir. 2004) _(en banc)._

The first--actual fraud--is not at issue in this case. With the second, the court must determine "whether the defendant has demonstrated **[*11]** that there is no possibility of recovery by the plaintiff against the in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an instate defendant." _Guillory,_ 434 F.3d at 308, _quoting Smallwood,_ 383 F.3d at 573.

The burden of proof is on the removing party. To determine the validity of an improper joinder claim, the court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." _Guillory,_ 434 F.3d at 308 (citation omitted). Additionally, the court must resolve all ambiguities in the controlling state law in the plaintiff's favor. _Id._ The court does not determine "whether the plaintiff will actually or even probably prevail on the merits of the case, but look only for a possibility that the plaintiff might to do." _Id._ at 308-09.

The court may resolve the issue of whether plaintiff has a reasonable basis of recovery under state law in two ways. The court may conduct a _Rule 12(b)(6)_-type **[*12]** analysis, looking initially at the allegations of the state-court petition to determine whether the petition states a claim under state law against the instate defendant. Ordinarily, if a plaintiff can survive a _Rule 12(b)(6)_-type challenge, there is no improper joinder. "That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." _Id._ at 309. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. _Id._

In this case, the court finds at the outset that as a matter of law, Plaintiff has no claims against Worley (which is not an insurance company) under the Louisiana Insurance Code, LSA-R.S. 22:658 and LSA-R.S. 22:1220, or for breach of contract. _See Rosinia v. Lexington Ins. Co.,_ 2006

U.S. Dist. LEXIS 79311, 2006 WL 3141247 *1 (E.D.La. 2006) (Barbier, J.); and _M&M Towing Co., Inc. v. United Capitol Ins. Co.,_ 1998 U.S. Dist. LEXIS 5168, 1998 WL 169694 at *1 (E.D.La. 1998) (McNamara, J.).

With regard to insurance adjusters (such as Worley), Louisiana courts have **[\*13]** consistently held that as a general rule, an insurance adjuster owes no duty to an insured to properly investigate or handle claims, or advise an insured on coverage issues. _See e.g., Pellerin v. Cash Pharmacy,_ 396 So.2d 371 (La. App. 1st Cir. 1981) (no duty on the part of an insurance adjuster to advise a claimant of the proper prescriptive period); _Rosinia v. Lexington Ins. Co.,_ 2006 U.S. Dist. LEXIS 79311, 2006 WL 3141247 *1 (E.D.La. 2006) (Barbier, J.) (although insured plaintiff claimed that insurance adjuster failed to act timely and absconded with their documentation, an insurance adjuster had no independent tort duty to the insured); _Rich v. Bud's Boat Rentals, Inc.,_ 1997 U.S. Dist. LEXIS 20236, 1997 WL 785668 (E.D.La. 1997) (Vance, J.) (although insured plaintiff alleged that adjuster negligently and carelessly investigated the insured's claims, there were no facts alleged from which adjuster could be said to have undertaken a duty to the insured).

However, in _Pellerin,_ the court stated that an adjuster could possibly assume a tort duty to the insured (i.e, in that case, a duty to disclose the prescriptive period to an insured) in certain circumstances depending on the "relative **[\*14]** education of the parties, the diligence of the claimant in seeking the facts, **the actual or apparent authority of the adjuster, the content of his promises to the claimants, misrepresentation or fraud."** _Pellerin,_ 396 So.2d at 373 (emphasis added). Apparently believing the adjuster may have undertaken or assumed a duty to inform the insured of prescription, the _Pellerin_ court remanded with instructions to allow the plaintiff to amend her petition to allege such a breach of duty.

In _Alarcon v. Aetna Cas. & Sur. Co.,_ 538 So.2d 696 (La. App. 5th Cir. 1989), the plaintiff sued Aetna and its adjuster for alleged negligent acts of omission and commission including: failing to evaluate the homeowners' claim in a timely manner; failing to make any meaningful effort to evaluate the homeowner's claim; failing to attempt to make a reasonable settlement of the homeowner's claim; and failing to fulfill the terms of the contract. _Id._ at 699. The appellate court found that these allegations although described as "negligent acts of omission and commission" did not propose that the adjuster had assumed a duty toward the plaintiff which he **[\*15]** breached. _Id._ Thus, the court found that the trial court had correctly maintained the exception of no cause of action as to the tort claim against the adjuster and Aetna. _Id._ However, the appellate court held "that under some circumstances a tort duty may exist in the settlement of an insurance claim and that the plaintiffs must be given the opportunity to amend their petition." _Id._

In _Loehn v. Hardin,_ 2002 U.S. Dist. LEXIS 8481, 2002 WL 922380 (E.D.La. 2003) (Porteous, J.), the Louisiana plaintiffs filed suit in state court against State Farm .and an adjuster, who was a Louisiana resident employed by State Farm. .Plaintiffs' allegations against the adjuster included breach of the duty to properly handle plaintiff's claim by denying the claim after a cursory inspection and by misrepresenting the various coverages in the policy. State Farm .removed the suit to federal court alleging that the adjuster was fraudulently joined, and plaintiffs filed a motion to remand.

The _Loehn_ court found that:

> State Farm .had an obvious duty to the Plaintiffs to handle their claim. This duty was delegated to . . . the adjuster who handled the matter for State Farm. .

Without ruling on whether **[\*16]** there was an actual breach of the duty, the _Loehn_ court found that a duty to the plaintiffs could have been breached by the adjuster and additionally noted that the _Alaracon_ and _Pellerin_ decisions issued by the state courts recognize that under some circumstances a tort duty may exist between an insurance claimant and an insurance adjuster. _See also, Dufrene v. State Farm Fire & Casualty Co.,_ 1993 U.S. Dist. LEXIS 1650, 1993 WL 35128

(E.D.La. 1993) (Arceneaux, J.) (granting motion to remand finding that State Farm had delegated to its adjuster the duty to properly handle the plaintiffs' claim, and thus the adjuster who was non-diverse was a proper party destroying the court's diversity jurisdiction).

Further, this court has recently found that an adjuster could have assumed and breached an independent tort duty to investigate and adjust a plaintiff's claim. *See Dillon v. Lincoln General Ins. Co.,* Docket No. 06-7354, 2006 WL 3469554 (E.D.La. November 30, 2006) (McNamara, J.), and *Pelican Hospitality Group v. United National Ins. Co.,* Docket No. 06-6168, Doc. No. 13, 2006 U.S. Dist. LEXIS 82882, 2006 WL 3313721 (E.D.La. November 13, 2006) (McNamara, J.). [8]

### FOOTNOTES

[8] However, the court did not reach the issue of whether or not the adjuster in either case in fact had or breached such a duty.

[*17] In *Dillon,* Plaintiffs essentially alleged that an adjuster first told them that their insured vehicles would be totaled, but then some eleven days later another adjuster told Plaintiffs that total replacement cost would not be paid relative to the vehicles' damage, since the vehicles were repairable. But Plaintiffs also alleged that the first adjuster had indicated an interest in purchasing the vehicles at a reduced cost, either from the Petitioners or Lincoln General after the insurance claim was resolved.

In asserting these allegations, the court found that Plaintiff had sufficiently pled "the actual or apparent authority of the adjuster, the content of his promises to the claimants, misrepresentation or fraud" which are the type of *Pellerin* circumstances from which the adjuster may be said to have undertaken an independent tort duty to the insured. *Dillon,* 2006 WL 3469554 at *3. Likewise, in *Pelican,* the court found that Plaintiff sufficiently pled in its Petition for Damages "the actual or apparent authority of the adjuster" and his "misrepresentation[s]." *Pelican,* 2006 U.S. Dist. LEXIS 82882, 2006 WL 3313721 at *4.

However, in this case, the court finds that [*18] Plaintiff has failed to make allegations from which it could be said that Worley assumed and breached a specific, independent duty to Plaintiff. Further, Plaintiff has failed to allege (or sufficiently allege) that Worley made misrepresentations or false representations or that it exceeded its authority to act of Hanover's behalf. Rather, Plaintiff specifically alleges that "Hanover is responsible for all allegations of fault and neglect against Worley under the doctrines of agency and respondeat superior." (Petition at P2). Further, Plaintiff's catch-all allegations asserted in Paragraph 26 of the Petition are not supported by any allegations of specific facts upon which a tort claim against a claims adjuster may be maintained. [9]

### FOOTNOTES

[9] As recited on page 3 of this opinion, Plaintiff alleges in Paragraph 26 that:

> Defendant Hanover is liable for acts and omissions of its agents, employees and representatives in the handling of plaintiffs' claim. Worley Claims Service is individually liable for the acts of its agents, employees and representatives in failing to adjust plaintiffs' claim in good faith and in failing to disclose material information to plaintiffs causing further delays and damages as a result.

(Petition at P 26).

The only specific allegation that Plaintiff makes against Worley is that the "initial [Worley] adjuster adjuster did not even get out his car and after his drive-by advised plaintiff that there was Three Thousand ($ 3,000.00) Dollars worth of damage to its property." (Petition at P 12).

**[\*19]** Thus, evaluating all of the factual allegations regarding Defendant Worley in the light most favorable to Plaintiffs, the court concludes that Plaintiff does not have a reasonable basis of recovery against Defendant Worley under Louisiana state law. Thus, Defendant Worley is an improperly joined defendant, and there is complete diversity between Plaintiff and Hanover.

Accordingly;

**IT IS ORDERED** that Plaintiffs' **"Motion to Remand"** be and is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Defendant Worley be and is hereby **DISMISSED** as improperly joined.

New Orleans, Louisiana, this **17th** day of **January, 2007.**

A.J. McNAMARA

UNITED STATES DISTRICT JUDGE

Source: Legal > / . . . / > **US District Court Cases, Combined**
Terms: removal w/ supplemental jurisdiction (Edit Search | Suggest Terms for My Search)
Focus: **piggy-back jurisdiction** (Exit FOCUS™)
View: Full
Date/Time: Sunday, June 8, 2008 - 6:46 PM EDT

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

About LexisNexis | Terms & Conditions | Contact Us
LexisNexis® Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**LexisNexis®** *Total Research System*

Switch Client   Preferences ┆ Sign Off   ? Help

*My Lexis™* ╲ Search ╲ Research Tasks ╲ Get a Document ╲ *Shepard's®* ╲ Alerts ╲ Total Litigator ╲ Transactional Adv

Service: **Get by LEXSEE®**
Citation: **1994 U.S. Dist. LEXIS 2814**

*1994 U.S. Dist. LEXIS 2814, \**

ALEXIUS KEYS, a minor, by her mother and natural guardian of her person and estate, JERRY ANN WASHINGTON, and JERRY ANN WASHINGTON, individually, Plaintiff, v. ROBERT KONRATH, WILLIAM ZIEMANN and OTHER UNKNOWN CHICAGO POLICE OFFICERS, Defendants.

93 C 7302

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1994 U.S. Dist. LEXIS 2814

March 9, 1994, Decided
March 10, 1994, Docketed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs move to remand the case to state court after it had been removed by one defendant police officer without the consent by both named defendant police officers, in plaintiffs' action against the two named officers and defendant unknown police officers that alleged wrongful death, assault, and illegal search and seizure.

**OVERVIEW:** Corporation counsel represented the two named officers and removed the action. The court granted plaintiffs' motion to remand the case to state court. The court found that removal was controlled by 28 U.S.C.S. § 1446, and it was not merely technical niceties that could be overlooked. The statute required the written consent of both named officers, but counsel only had consent of one. Looking to the exceptions to the statute, the court found none were to be applied. The court denied the request to amend the removal petition, for the 30 days allowed in § 1446(b) had passed. As to the exception to remand when one of the named defendants had not been served at the time of the removal, the court refused to apply the exception because the same counsel was representing both, and there was no proof of reasonable diligence in counsel trying to obtain consent of the second named officer or to verify service had been made. The court denied plaintiffs costs and expenses pursuant to 28 U.S.C.S. § 1447, for the removal was procedurally deficient. There was no showing of bad faith in removing the case, and it would have been properly removable in that federal subject matter jurisdiction existed.

**OUTCOME:** The court granted plaintiffs' motion to remand the case to state court. The court denied plaintiffs recovery of litigation costs and expenses.

**CORE TERMS:** removal, notice, removing, join, amend, leave to amend, appearance, unknown, flaw, cure, erroneously, contacted, consented

## LEXISNEXIS® HEADNOTES

⊟ **Hide**

*Att 2*

Civil Procedure > Removal > Proceedings > General Overview 🔳
Governments > Legislation > Interpretation 🔳
Governments > Legislation > Statutory Remedies & Rights 🔳

*HN1* The plaintiff is the master of his complaint and has the privilege of choosing his forum
in the first instance. The plaintiff's choice of a state court forum may be disturbed by a
proper petition for removal brought by the defendants. 28 U.S.C.S. § 1446. Removal
is a purely statutory right that limits the state's judicial powers; as such, its
requirements must be strictly construed. The party petitioning for removal bears the
burden of establishing that all of the requirements for removal have been met. More Like This He
| *Shepardize:* Restrict By Headnote

Civil Procedure > Removal > Proceedings > General Overview 🔳

*HN2* Removal of actions from state court to federal court is governed by 28 U.S.C.S. §
1446. Every non-nominal defendant must join in the notice of removal; failure to
include all such defendants is a fatal flaw requiring that the case be remanded. More Like This He
| *Shepardize:* Restrict By Headnote

Civil Procedure > Removal > Proceedings > General Overview 🔳
Governments > Legislation > Statutes of Limitations > Time Limitations 🔳

*HN3* An exception to failure of obtaining consent requiring remand is that removal petitions
may be freely amended during the statutory period in which a petition could be
brought. The statute provides that removal petitions may be brought within 30 days
after the defendant receives a copy of the complaint through service or otherwise. 28
U.S.C.S. § 1446(b). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Removal > Proceedings > General Overview 🔳

*HN4* An exception to failure of obtaining consent requiring remand arises if a defendant has
not been served by the time the notice of removal is filed. The absence of a
defendant's consent must be explained in the notice of removal; otherwise, the notice
is defective. More Like This Headnote

Civil Procedure > Removal > Basis > General Overview 🔳
Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court 🔳
Governments > Legislation > Interpretation 🔳

*HN5* The removal statute is to be narrowly construed, and any doubt regarding jurisdiction
should be resolved in favor of the state court entertaining the case. More Like This Headnote

Civil Procedure > Removal > Proceedings > General Overview 🔳
Governments > Legislation > Interpretation 🔳

*HN6* The requirements of 28 U.S.C.S. § 1446 are not merely technical niceties that can
easily be dispensed with. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview 🔳
Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects 🔳
Civil Procedure > Removal > Proceedings > Notices 🔳

*HN7* 28 U.S.C.S. § 1447(c) provides that an order remanding a case to state court may
require the defendant to pay just costs and actual expenses, including attorney fees,
incurred as a result of the removal. More Like This Headnote

**JUDGES: [*1]** Kocoras

**OPINION BY:** CHARLES P. KOCORAS

## *MEMORANDUM OPINION*

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on the plaintiffs' motion to remand the case to state court following removal by one of the defendants. For the reasons that follow, we grant the motion.

## BACKGROUND

The plaintiffs, Alexius Keys and Jerry Ann Washington (collectively, "Washington"), sued the defendants, Robert Konrath ("Konrath"), William Ziemann ("Ziemann"), and other unknown Chicago police officers, in state court, alleging wrongful death, assault, and illegal search and seizure. Ziemann was served with the summons and complaint on November 4, 1993 and Konrath was served on November 22, 1993. On December 3, 1993, Assistant Corporation Counsel David Zinder ("Zinder") filed a notice of removal of the action.

The notice of removal stated that Konrath was the removing party. Zinder states that that was an error. Zinder states that he intended to name Ziemann as the removing party because he understood that only Ziemann had been served. Zinder never contacted Konrath to determine if Konrath had been served; instead, he contacted the Office of the Superintendent of the Chicago Police Department. **[*2]** That office incorrectly stated that Konrath had not been served. Ziemann has not expressly consented to the removal.

Washington now moves to remand this case to state court, because removal was not consented to by both named defendants.

## DISCUSSION

*HN1* The plaintiff is the master of his complaint and has the privilege of choosing his forum in the first instance. The plaintiff's choice of a state court forum may be disturbed by a proper petition for removal brought by the defendants. *See* 28 U.S.C. § 1446. Removal is a purely statutory right that limits the state's judicial powers; as such, its requirements must be strictly construed. *Mechanical Rubber & Supply v. American Saw & Mfg.*, 810 F. Supp. 986, 989 (C.D. Ill. 1990). The party petitioning for removal bears the burden of establishing that all of the requirements for removal have been met. *Fellhauer v. City of Geneva*, 673 F. Supp. 1445, 1447 (N.D. Ill. 1987).

*HN2* Removal of actions from state court to federal court is governed by 28 U.S.C. § 1446. Every non-nominal defendant must join in the notice **[*3]** of removal; failure to include all such defendants is a fatal flaw requiring that the case be remanded. *Chicago, Rock Island & Pacific Ry. Co. v. Martin*, 178 U.S. 245, 248, 44 L. Ed. 1055, 20 S. Ct. 854 (1900). [1] Here, Ziemann did not join the petition. Therefore, remand is appropriate, unless an exception to the above rule applies.

## FOOTNOTES

1 Unknown or nominal defendants need not join in the removal petition. *Romashko v. Avco Corp.*, 553 F. Supp. 391, 392 (N.D. Ill. 1983).

*HN3* The first exception is that removal petitions may be freely amended during the statutory period in which a petition could be brought. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 368 (7th

http://www.lexis.com/research/retrieve?_m=af15fcae479b96fb9883e...

Cir. 1993). The statute provides that removal petitions may be brought within 30 days after the defendant receives a copy of the complaint through service or otherwise. 28 U.S.C. § 1446(b). In this case, that period **[*4]** has passed and the removal petition was not amended. Thus, this exception does not aid the defendants.

HN4⚓A second exception arises if a defendant has not been served by the time the notice of removal is filed. _Shaw, 994 F.2d at 369._ The absence of a defendant's consent must be explained in the notice of removal; otherwise, the notice is defective. _Id. at 368._ Here, the notice of removal was brought in Konrath's name and the notice indicates that Ziemann did not join the petition because he had not been served. This was not correct, as both Konrath and Ziemann were served by November 22, 1993, before the notice of removal was filed on December 3, 1993. Thus, we are faced with the question of whether the incorrect assertion that Ziemann's consent was not needed because he had not been served renders the notice defective. In this case, we are convinced that it does, because the attorney filing the notice of removal did not attempt to contact Ziemann **2** to determine whether he had been served. Thus, this case is unlike the case cited by the defendants, _Milstead Supply Co. v. Casualty Ins. Co., 797 F. Supp. 569, 573 (W.D. Tex. 1992),_ **[*5]** where the court found that the removing party was reasonably diligent in determining whether another defendant had been served and had no actual or constructive knowledge that the other defendant had been served. Here, one attorney was representing both defendants and he failed to take the simple step of asking Ziemann whether he had been served before filing the removal petition. This was not a case of reasonable diligence. We are not persuaded that "exceptional circumstances" exist in this case that would warrant departure from the strict requirements of section 1446.

## FOOTNOTES

2 Nor did the attorney contact Konrath. As explained in the Background section, defendants' counsel now states that he (erroneously) believed that Konrath had not been served, but then erroneously named Konrath as the removing party.

Similarly, we are unpersuaded that the appearance of Zinder as counsel for both defendants constitutes a manifestation of Ziemann's consent to removal sufficient to cure the deficiencies of the notice of removal. This **[*6]** theory was implicitly rejected in _Fellhauer,_ where the court found that the plaintiff was not estopped from moving to remand by the fact that both the removing defendant and the non-removing defendant had filed substantive motions in federal court. 673 F. Supp. at 1449. The court remanded the case, even though the non-joining defendant was represented by its own counsel in federal court and had filed substantive motions. _Id._ Here, the only motion filed by either of the defendants was a motion for extension of time, which is not a substantive motion. Moreover, Zinder represents both defendants, so his appearance on behalf of Ziemann was incidental to his representation of Konrath. Applying the reasoning of _Fellhauer_ to the instant case, where the facts provide even less support for retaining the case, we hold that Ziemann's "implied consent" theory is insufficient to cure the defective notice of removal. The case the defendants cite, _Mechanical Rubber, supra,_ does not support their position. There, the notice of removal stated that the second defendant joined in the notice, but did not contain the second defendant's **[*7]** signature. Here, the notice indicates that Ziemann does not join. _See_ P 5, Notice of Removal. In sum, the requirements for removal have not been met and there are no compelling reasons for us to retain the case in light of Washington's timely motion to remand.

Defendants ask that we allow them to amend the removal petition if we will not excuse the shortcomings of the petition. We will not grant leave to amend. HN5⚓The removal statute is to be narrowly construed, and any doubt regarding jurisdiction should be resolved in favor of the state court entertaining the case. _Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993)_ (citations omitted). Applying those rules here counsels strongly against allowing defendants to amend the removal petition. Further support for this position is found in _Fellhauer,_ where the

Get a Document - by Citation - 1994 U.S. Dist. LEXIS 2814                http://www.lexis.com/research/retrieve?_m=af15fcae479b96fb9883e...

court discusses the federalism implications of allowing a defendant to amend a removal petition past the 30-day time limit of the removal statute. There, the court stated,

> We believe that [defendant's] characterization of the defect in his petition as a mere "technical" flaw that can be swept away like so much dust seriously misunderstands **[*8]** the conditions under which the formidable power of the federal judiciary can -- and should -- be invoked. . . . To exercise jurisdiction in cases such as this one would serve to concentrate the power of the federal government unnecessarily at the expense of the sovereignty of the several States.

*Fellhauer,* 673 F. Supp. at 1449-50. We agree with Judge Zagel that **HN6** the requirements of section 1446 are not merely technical niceties that can easily be dispensed with. In the instant case, the two defendants had common counsel who committed several preventable errors in the notice of removal. We see no reason to ignore the strict requirements of section 1446 and substantial case law and allow defendants to amend their petition to correct these errors at this point. Accordingly, Washington's motion to remand is granted.

Section 1447(c) **HN7** provides that an order remanding a case to state court may require the defendant to pay just costs and actual expenses, including attorney fees, incurred as a result of the removal. In determining whether to award costs and expenses, we note first that this case was properly removable in that federal subject matter jurisdiction **[*9]** existed. This was not an instance of bad-faith removal. But for the errors in the notice of removal, this case would have proceeded in this Court. Accordingly, we decline to award costs or expenses.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is granted and the defendants' motion for leave to amend is denied. The case is remanded to the Circuit Court of Cook County.

Charles P. Kocoras

United States District Judge

Dated: *March 9, 1994*

Service: **Get by LEXSEE®**
Citation: **1994 U.S. Dist. LEXIS 2814**
View: Full
Date/Time: Monday, June 9, 2008 - 8:23 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

LexisNexis® *Total Research System*

*My Lexis*™ ⎮ Search ⎮ Research Tasks ⎮ Get a Document ⎮ *Shepard's*® ⎮ Alerts ⎮ Total Litigator ⎮ Transactional Advisor ⎮

Service: **Get by LEXSEE®**
Citation: **1988 U.S. Dist. LEXIS 3325**

*1988 U.S. Dist. LEXIS 3325, \**

Crum and Forster Managers Corp. et al., Plaintiffs, v. Robert A. Carney, et al., Defendants

No. 88 C 1470

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1988 U.S. Dist. LEXIS 3325

April 12, 1988, Decided; April 14, 1988, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff insurance companies filed a motion to remand an action against defendants, insurance corporations and a major shareholder, alleging that the shareholder breached business obligations owed to the companies with respect to insurance arrangements to state court after defendant had sought removal under 28 U.S.C.S. § 1441.

**OVERVIEW:** The companies filed an action against defendants in state court asserting that the shareholder had forged signatures and issued insurance policies without authorization and failed to remit amounts due on commission premiums. An attorney, who was a registered agent for one of the corporations, received a copy of the complaint first. Official service by court summons was then made on remaining defendants. Defendants sought removal of the proceedings to the court. The companies filed a motion to remand the case to state court because defendants failed to make their removal request within 30 days of receiving notice as required by 28 U.S.C.S. § 1446(b). The court granted the motion, holding that defendants did not seek removal within 30 days of the attorney's receipt of the complaint. The court rejected defendants' argument that the attorney represented a nominal party. No distinction was made in real and nominal parties in the decisional law. Further, defendants were not entitled to apply an exception under 28 U.S.C.S. § 1441(c) based on a separate and independent claim joined with a nonremovable claim to obtain an extension for later-served defendants.

**OUTCOME:** The court granted the motion.

**CORE TERMS:** removal, notice, later-served, removable, nominal, decisional law, joined, initial pleadings, registered, implicated, summons

## LEXISNEXIS® HEADNOTES

▫ **Hide**

Civil Procedure > Removal > Basis > General Overview 🔄
Civil Procedure > Removal > Postremoval Remands > General Overview 🔄
Civil Procedure > Removal > Proceedings > General Overview 🔄
*HN1* A defendant seeking removal under 28 U.S.C.S § 1441 must file a verified petition for
⌁ removal within 30 days after receipt by the defendant of a copy of the initial pleadings
setting forth the claim for relief. 28 U.S.C.S. § 1446(b). The 30-day period established
by section § 1446(b) is mandatory and cannot be extended. A defendant seeking

*AH 3*

removal must comply with all statutory requirements, and the court must strictly construe these requirements, and when there is doubt as to whether the requirements have been satisfied, the case should be remanded. More Like This Headnote

Civil Procedure > Removal > Proceedings > General Overview
Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview

HN2 In calculating the 30-day period for purposes of removal under 28 U.S.C.S. § 1446(b), service of process on a defendant does not necessarily control. When multiple defendants are involved, courts read § 1446(b) as contemplating a 30-day period beginning on the date that any defendant first receives, by service or otherwise, a copy of the initial pleading. Thus, the receipt by any defendant providing sufficient notice of claims which could be removed to federal court begins the period in which the petition for removal must be filed. More Like This Headnote

Civil Procedure > Removal > Basis > General Overview
Civil Procedure > Removal > Elements > Removability

HN3 28 U.S.C.S. § 1441(c) applies only to those separate and independent claims which are removable and which are joined with one of more otherwise nonremovable claims or causes of action. It does not permit a later-served defendant who is implicated in a separate and independent count an extension of time to file a removal petition when that count is joined with other counts which are removable. More Like This Headnote

## OPINION BY: [*1] PARSONS

## OPINION

MEMORANDUM OPINION AND ORDER

James B. Parsons, Judge.

Plaintiffs, Illinois insurance companies, filed a three count complaint against defendants in state court on January 15, 1988, alleging that defendant Carney and the various insurance corporation which he is a major shareholder breached the business obligations owed plaintiffs with respect to insurance arrangements. Plaintiffs specifically allege that Carney forged signatures and issued insurance policies without authorization and failed to remit amounts due on commission premiums. The attorney who is a registered agent for one of the defendant corporations and who initially represented all defendants in the state court received a copy of this complaint on January 16, 1988. Official service by court summons was made on the defendants thereafter. Service and summons of a first amended complaint followed within a week. After an emergency hearing in state court in which all defendants were represented by the same counsel, the parties agreed to stipulated terms. Thereafter on February 19, 1988, defendants filed their petition for removal to this court. Plaintiffs object to this removal and move for a remand to state court because **[*2]** the defendants failed to make this request within thirty days of receiving notice as required by 28 U.S.C. 1446(b).

HN1 A defendant seeking removal under 28 U.S.C. 1441 must filed a verified petition for removal "within thirty days after receipt by the defendant of a copy of the initial pleadings setting forth the claim for relief . . . ." 28 U.S.C. 1446(b). The thirty day period established by section 1446(b) is mandatory and cannot be extended. See, e.g., Dial-In Inc. v. ARO Corp., 620 F.Supp. 27, 29 (N.D. Ill. 1985); Perrin v. Walker, 385 F. Supp. 945, 948 (E.D. Ill. 1974). A defendant seeking removal must comply with all statutory requirements, and the court must strictly construe these requirements and when there is doubt as to whether the requirements have been satisfied, the case should be remanded. Jones v. General Tire and Rubber Co., 541 F.2d 660 (7th Cir. 1976).

*HN2*⚡In calculating the thirty day period, service of process on a defendant does not necessarily control. When multiple defendants are involved, courts have read section 1446(b) as contemplating a thirty day period beginning on the date that any defendant first receives, by service or otherwise, a copy of the **[\*3]** initial pleading. *Dial-In*, 620 F. Supp. at 28. Thus, the receipt by any defendant providing sufficient notice of claims which could be removed to federal court begins the period in which the petition for removal must be filed. Here, defendant Risk Advisory Corporation received notice through its registered agent and attorney on January 16. The receipt of this complaint started the thirty day period for all defendants. The defendants failed to file their petition for removal until February 19, more than thirty days after the receipt of this notice .

Defendants do not dispute that thirty days elapsed but argue that the filing was nonetheless timely because: 1) Risk Advisory Corporation was a nominal defendant and therefore the thirty day period should not begin with notice to it, but to the other defendants on January 22, and 2) Count III was a separate and independent claim and could be removed by a later served defendant.

Defendants' first claim is without merit. I find nothing in section 1446 that distinguishes between real and nominal defendants; nor does the decisional law in this area make such a distinction. *See Ortiz v. General Motors Acceptance Corp.*, 583 F.Supp. 526, **[\*4]** 529 (N.D. Ill. 1984); *Perrin*, 385 F. Supp. at 948; *Transport Indemnity Corp. v. Financial Trust Co.*, 339 F. Supp. 405 (C.D. Cal. 1972). The decisional law to which defendants cite is inapposite and refers to instances where a plaintiff has sought to avoid removal by naming nominal, non-diverse defendants to defeat diversity or where nominal parties may not be required to join in the petition for removal. That is clearly not the case here. The receipt of notice by Risk Advisory Corporation was sufficient notice to one of the defendants to begin the clock on the thirty day period.

Defendants' second argument is based on an exception which at least one court has recognized. [1] In *Ortiz*, Judge Bua of this court recognized that when claims against a later-served defendant. 583 F. Supp. at 530. Such policy permits a later-served defendant. 583 F. Supp. at 530. Such policy permits a later-served defendant the full thirty days to which he is entitled to remove those removable claims that pertain to him.

### FOOTNOTES

[1] This court knows of only one other exception to the thirty day requirement which has been created by decisional law. If the plaintiff filed an amended complaint that so changes the nature of the action to constitute a substantially new suit begun that day, then the thirty day begins anew with service or notice of this amended complaint. *See Wilson v. Intercollegiate (Big Ten) Conference,* 688 F.2d 962, 965 (7th Cir. 1982). This is not implicated here because plaintiffs' amended complaint differed only slightly form their initial filing.

**[\*5]** However, *HN3*⚡section 1441(c) applies only to those separate and independent claims which are removable and which are "joined with one of more *otherwise nonremovable claims or causes of action.*" It does not permit a later-served defendant who is implicated in a separate and independent count an extension of time to file a removal petition when that count is joined with other counts which are removable. Assuming that Count III is separate and independent, as defendants argue, it is nonetheless joined with the claims in Counts I and II, both of which are *removable* claims. Section 1441(c) does not create an exception in such instance. Defendant Carney who is sued in Count III and was a later-served defendant is nonetheless bound by the thirty day period which began with service on the first-served defendant named in a removable claim. Thus, because the notice served on Risk Advisory Corporation occurred on January 16, and the petition for removal was filed February 20, I find the petition was untimely.

CONCLUSION

For the reasons state herein, the plaintiffs' motion to remand this case to this case to the state court is granted.

Service: **Get by LEXSEE®**
Citation: **1988 U.S. Dist. LEXIS 3325**
View: Full
Date/Time: Monday, June 9, 2008 - 8:24 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
△ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
❹ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 **LexisNexis®**   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.