**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELLA MANDELA DWI MUSTIKA, Special Administrator of the Estate of Achmad Chotib Syamsur, deceased, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 2178 |
| -v- | ) ) ) | |
| HONEYWELL, INTERNATIONAL, a corporation, | ) ) ) | |
| Defendant. | ) ) | |

**HONEYWELL INTERNATIONAL'S**
**MOTION FOR A PROTECTIVE ORDER REGARDING DISCOVERY**

Defendant, Honeywell International Inc. ("Honeywell"), by its attorneys, William F.

DeYoung, Loretto M. Kennedy, Mark A. Stang, and Kendall E. Woods, move this Honorable

Court, pursuant to Rule 26(c), for a Protective Order regarding discovery and to stay discovery

pending the disposition of certain motions, including Honeywell's Motion to Dismiss, Hamilton

Sundstrand's Motion to Consolidate, and Plaintiffs' Motion to Remand in *Sumiati v. Hamilton*

*Sundstrand Corporation*, No. 08 C 3289. In support of its motion, Honeywell states as follows:

1.     On July 3, 2008, Honeywell filed a Motion to Strike and Dismiss Plaintiffs'

Complaint pursuant to 12(b)(6).

2.     On July 15, 2008, this Court entered a briefing schedule for Honeywell's Motion,

with a response date of August 5, 2008 and a reply date of August 19, 2008 and further indicated

its ruling would be by mail. (See July 15, 2008 order attached hereto as Exhibit A).

3.     On July 15, 2008, plaintiffs issued discovery to defendant. (See plaintiffs'

discovery attached hereto as Exhibit B).

4.     Honeywell's 12(b)(6) Motion to Dismiss raises issues that could potentially dispose of this case or result in a change in the pleadings and/or the allegations and theories of liability against the defendant in this case.

5.     In addition to the Motion to Dismiss, there is also pending before this Court a Motion for Consolidation and Reassignment of this action with the case of *Sumiati v. Hamilton Sundstrand*, Case No. 08 C 3289 ("*Sumiati*") (currently assigned to Judge Hibbler). The Motion for Consolidation and Reassignment based on the relatedness of the actions was fully briefed as of July 3, 2008 and is awaiting ruling.

6.     Furthermore, there is a pending Motion to Remand the *Sumiati* action for which a briefing schedule has been entered and a status date of September 24, 2008 has been set by Judge Hibbler.

7.     More than 50 plaintiffs are common to both the *Sumiati* and *Mustika* cases.

8.     As noted above, these cases are awaiting a determination of whether they should be re-assigned based on relatedness due to the fact that both lawsuits (i) arise from the exact same airline crash in Indonesia on September 26, 1997, (ii) involve allegations about alleged defects in the same ground proximity warning computer ("GPWC"), (iii) involve more than 50 of the same plaintiffs, and (iv) have the same attorney representing those plaintiffs in both *Mustika* and *Sumiati*.

9.     The threshold motions identified above should be resolved in this matter before discovery is commenced to ensure proper case management by the Court and avoid duplication of discovery, as well as undue expense, time, and burden to all parties and this Court.

10.     Federal Rule of Civil Procedure 26(c) states:

(c) Protective Orders.

(1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

\* \* \*

(B) specifying terms, including time and place, for the disclosure or discovery;

Fed. R. Civ. Pro. 26(c).[1]

11.     In light of these threshold issues that are currently being briefed before this Court and before Judge Hibbler, commencing discovery in this matter is premature.

12.     While there is no rule requiring a stay on discovery pending ruling on motions, stays on discovery in light of a pending 12(b)(6) motion are granted in this District with substantial frequency. *In re Sulfuric Acid Antitrust Litigation*, 213 F.R.D. 331, 336 (N.D.Ill. 2005); *Cooper v. Harris*, 1999 WL 261742 (stay on discovery imposed pending resolution of 12(b)(6) motion); *Cataldo v. City of Chicago*, 2002 WL 91903 (stay on discovery imposed pending resolution of motion to dismiss). "A stay of discovery pending resolution of a motion to dismiss avoids unnecessary discovery in the event the motion is granted." *Stokes v. City of Chicago*, 1986 WL 12311 (N.D.Ill. 1986).

13.     Further, and equally important, the currently pending Motion for Consolidation and Reassignment based on relatedness and the pending Motion to Remand should be decided

---

[1] The parties conferred about discovery and deadlines on July 3, 2008. Although plaintiffs' counsel initially agreed that fact discovery deadlines should not be imposed until the Court had ruled on the pending motions, plaintiffs' counsel later reversed his position and expressed that discovery should be addressed immediately as to the *Mustika* action. The plaintiffs' and defendant's respective positions on the appropriate time for commencement of discovery were discussed in the initial conference between the parties and are reflected in the Joint Initial Status Report attached hereto as Exhibit C). See certification regarding the same attached hereto.

prior to commencing discovery in this matter as the resolution of those motions will affect the scope and applicability of any current or further written or oral discovery as well as case management issues relating to the same.

14.    Due to the overlapping nature of the *Mustika* and *Sumiati* matters, including the fact that more than 50 plaintiffs are in both actions, it would not be prudent to initiate discovery against the *Mustika* plaintiffs until the threshold questions raised in the pending motions are addressed by the Court.  Likewise, plaintiffs should not be pursuing discovery against the defendant in *Mustika* until resolution of the motions.

15.    Staying discovery, pending resolution of the Motion to Dismiss, Motion for Consolidation and Reassignment, and Motion for Remand, will not result in any significant delay, because the Motion for Consolidation and Reassignment is already fully briefed, the Motion to Dismiss has a briefing schedule in place and will be fully briefed by August 19, 2008, and the Motion to Remand now has a briefing schedule with a status date of September 24, 2008. In addition, a stay will ensure that both cases can be properly addressed and managed by the Court on all aspects, including discovery, once the pending motions are decided.  There is no question that if these cases are consolidated, discovery should be coordinated to minimize duplication and burden on both the plaintiffs and the defendants.

16.    At this juncture, a stay in this matter is warranted as it will avoid unnecessary expenditure of resources prior to resolution of the pending motions.  *Stokes*, 1986 WL 12311. Honeywell should not be prejudiced at this stage by having to expend the time and incur the cost in responding to plaintiffs' discovery while motions critical to shaping the pleadings in this case and the further management of both the *Mustika* and *Sumiati* actions are pending.  Further, the Motion for Consolidation and Reassignment and the Motion to Remand should be decided prior

to the initiation of any discovery as the rulings on those issues will directly impact the course of this litigation as well as the scope and applicability of discovery.

17.    Defendant does not interpose this motion for purposes of delay but rather to insure proper utilization of both the Court's and the parties resources as well as to ensure coordinated case management of related actions.

18.    Therefore, Honeywell respectfully requests that this Court stay discovery in this matter pending resolution of the 12(b)(6) Motion to Dismiss, the Motion for Consolidation and Reassignment, and the Motion to Remand.

WHEREFORE, defendant, Honeywell International Inc. moves for a protective order and to stay discovery in this matter pending resolution of the 12(b)(6) Motion to Dismiss, the Motion for Consolidation and Reassignment, and the Motion to Remand.

                                          _____/s/ William F. DeYoung_____
                                          One of the Attorneys for Defendant
                                          HONEYWELL INTERNATIONAL INC.

William F. DeYoung
Loretto M. Kennedy
Mark A. Stang
Kendall E. Woods
CHUHAK & TECSON, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 444-9300

STATE OF ILLINOIS        )
                         ) ss:
COUNTY OF COOK           )

## **AFFIDAVIT OF SERVICE**

I, Kendall E. Woods, state that I caused a true and correct copy of Honeywell International's Motion For A Protective Order Regarding Discovery, to be served via the CM/ECF system, which will send notification of such filing to all parties listed as attorneys of record, before 4:00 p.m. on the 5th day of August, 2008, upon the following counsel of record:

Floyd A. Wisner, Esq.
Wisner Law Firm
934 S. 4th St.
St. Charles, IL 60174
Telephone: (630) 513-9434
Facsimile: (630) 513-0716

_____Kendall E. Woods_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ELLA MANDELA DWI MUSTIKA, Special Administrator of the Estate of Achmad Chotib Syamsur, deceased, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 2178 |
| -v- | ) ) ) | |
| HONEYWELL, INTERNATIONAL, a corporation, | ) ) ) | |
| Defendant. | ) | |

**CERTIFICATION**

1.      I, Loretto M. Kennedy, am an attorney of record in this matter for defendant, Honeywell International, Inc.

2.      On July 3, 2008, I personally conferred in a meeting with Floyd Wisner of The Wisner Law Firm, counsel for plaintiffs in this action, regarding fact discovery in this matter.

3.      Plaintiffs' counsel initially indicated that he agreed that fact discovery should not commence and any corresponding discovery deadlines should not be imposed until the pending motions have been resolved.

4.      During communications after the initial conference, Plaintiffs' counsel reversed his position with respect to fact discovery and corresponding deadlines. During the post-conference communications, Mr. Wisner advised that he wanted fact discovery to proceed and for fact discovery deadlines to be imposed immediately.

5.      Good faith efforts to resolve the timing of fact discovery in this matter did not result in an accord between the parties and the parties respective positions are reflected in the Joint Initial Status Report attached to the Motion for Protective Order as Exhibit C.

6.    Defendant does not interpose this motion for purposes of delay but rather to insure proper utilization of both the court's and the parties resources as well as to ensure coordinated case management of related actions.

The undersigned certifies that the above statements are true and accurate and that the movant has in good faith conferred on these discovery issues in an effort to resolve the dispute without court action.

                                          /s/ Loretto M. Kennedy
                                          One of the Attorneys for Defendant
                                          HONEYWELL INTERNATIONAL INC.

William F. DeYoung
Loretto M. Kennedy
Mark A. Stang
Kendall E. Woods
CHUHAK & TECSON, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 444-9300

EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1
### Eastern Division

Ella Madanella Dwi Mustika, et al.

                                        Plaintiff,

v.                                              Case No.: 1:08−cv−02178
                                              Honorable Ronald A. Guzman

Honeywell, International

                                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, July 15, 2008:

      MINUTE entry before the Honorable Ronald A. Guzman:Set deadlines motion by Defendant Honeywell, International to dismiss, MOTION by Defendant Honeywell, International to strike complaint 1[16] : Response due by 8/5/2008. Reply due by 8/19/2008. Ruling to be by mail. Mailed notice(cjg, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELLA MADANELLA DWI MUSTIKA, et al,

Plaintiffs

v.                                    No. 08 C 2178

HONEYWELL, INTERNATIONAL,

Defendant

**PLAINTIFFS' INTERROGATORIES TO DEFENDANT**

Plaintiffs Ella Madanella Dwi Mustika, et al, pursuant to Federal Rule of Civil

Procedure 33, request that defendant Honeywell, International answer the following

interrogatories under oath within the time provided by the Rule:

1. Please state the name, current address, telephone number and employer, and

former position with Sundstrand Data Control of all those persons who were employed

by the Sundstrand Data Control division of Sundstrand Corp. at the time Sundstrand Data

Control was purchased by Allied Signal Co. and who thereafter became employed by

Allied Signal Co.

ANSWER:

2. Please state the name, current address, telephone number and employer, and former position with Sundstrand Data Control of all those persons who were employed by the Sundstrand Data Control division of Sundstrand Corp. at the time Sundstrand Data Control was purchased by Allied Signal Co. and who thereafter did not become employed by Allied Signal Co.

ANSWER:

3. Please state the name, current address, telephone number and employer of all those persons who participated in the design, testing and certification of the Sundstrand Mark II or MK II Ground Proximity Warning System (GPWS) or Ground Proximity Warning Computer (GPWC) (hereinafter referred to as "the subject model GPWS") and state the tasks performed by each such person in this regard.

ANSWER:

4. Please state the name, current address, telephone number and employer of all those persons who participated in the production, manufacture, assembly, quality control, and sale of a certain Mark II or MK II GPWS or GPWC, serial number 2689 (hereinafter referred to as "the subject GPWS") and state the tasks performed by each such person in this regard.

ANSWER:

5. Please state the name, current address, telephone number and employer of all those employees, agents or representatives of Sundstrand Data Control, Sundstrand Corp. Hamilton Sundstrand Corp., Allied Signal Co., and Honeywell, Int'l (hereinafter referred to as "Honeywell") who provided after-sale customer support, technical advice, and advice as to the use, operation, maintenance, repair, and modification concerning the subject model GPWS to any person or entity and state the tasks performed by each such person in this regard.

ANSWER:

6. Please state the name, current address, telephone number and employer of all those employees, agents of representatives of Honeywell who received, investigated and/or responded to reports from any person or entity of alleged false or nuisance warnings or alerts by the subject model GPWS and state the tasks performed by each such person in this regard.

ANSWER:

7. Please state the name, current address, telephone number and employer of all those employees, agents or representatives of Honeywell who participated in the marketing of the Enhanced Ground Proximity Warning System or Computer (EGPWS) and state the tasks performed by each such person in this regard.

ANSWER:

8. Please state the name, current address, telephone number and employer of all those persons or entities who participated in any investigation of the subject air crash and state the tasks performed by each such person.

ANSWER:

9. Please state the name, current address, telephone number and employer of all those persons or entities who analyzed, reviewed, assessed or considered the performance of the subject GPWS or a subject model GPWS or an EGPWS during the subject accident flight.

ANSWER:

10. Please list all aviation accidents within the period from 10 years prior to the date of the subject crash to date which allegedly involved a Controlled Flight Into Terrain and in which the accident aircraft was allegedly equipped with the subject model GPWS; state whether Honeywell participated in any way and to any extent in an investigation of such crash; and identify all employees, agents or representatives of Honeywell who so participated.

ANSWER:


_____
Floyd A. Wisner
Attorney for Plaintiffs



Floyd A. Wisner
Wisner Law Firm
934 S 4th St
St Charles, IL 60174
(630) 513-9434


## Certificate of Service

The undersigned attorney certifies that he served these interrogatories upon counsel for defendant by placing a copy in the U.S. mail at St Charles, IL on July 15, 2008.

_____
Floyd A. Wisner

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELLA MADANELLA DWI MUSTIKA, et al,

        Plaintiffs

        v.               No. 08 C 2178

HONEYWELL, INT'L,

        Defendant

## PLAINTIFFS' REQUEST TO PRODUCE

Plaintiffs Ella Madanella Dwi Mustika, et al, request, pursuant to Federal Rule of Civil Procedure 34, that defendant Honeywell, Int'l produce the following documents within the time provided by the Rule:

1. All design documents for the Sundstrand Mark II or MKII Ground Proximity Warning System or Computer (the subject model GPWS).

2. All installation design drawings and all design and engineering drawings for, and all other documents concerning, the design and engineering of the interfacing, interrelation or integration of the MKII Ground Proximity Warning Computer into the subject model GPWS.

3. All documents concerning filter, electrical, mechanical and software requirements, voice warnings and all other operation and maintenance requirements for the subject model GPWS.

4. All documents concerning filter design and electrical design, including, but not limited to, electrical schematics, electrical layout for each board, board layout, board schematics, electrical interconnect, documents and material list for the subject model GPWS.

5. All documents concerning preliminary design review and critical design review of the subject model GPWS.

6. All documents concerning software design for the subject model GPWS, including, but not limited to, voice warnings, and all documents concerning operation and maintenance design, including, but not limited to, Operation and Maintenance Manuals, Depot Level, and Quality Repair Facility Level.

7. All documents concerning the mechanical design of the subject model GPWS, including, but not limited to, board design, interconnect design, connector design, mechanical interconnect, ATR or ½ ATR design.

8. All engineering documents for the subject model GPWS, including but not limited to, the Program Plan, the System Engineering Management Plan and the Sundstrand System Requirements.

9. All engineering change procedures for the subject model GPWS.

10. All engineering reports provided by Honeywell, Allied Signal Corp. Hamilton Sundstrand Corp. Sundstrand Corp. or Sundstrand Data Control or any employee, agent, attorney or representative thereof ("Honeywell") to any person or entity concerning the subject model GPWS.

11. All schematic diagrams of the power supply for the subject model GPWS on the A300B4-200 aircraft, the subject accident aircraft, and any other aircraft.

12. All documents concerning modifications or proposed modifications, or "dots" to the subject model GPWS.

13. All documents concerning all pre- and post-production engineering release design change design requests, design change orders, and technical change orders for the subject model GPWS

14. All documents concerning Honeywell's in-house system engineering, electrical engineering, mechanical engineering, and production processes in effect at the time of the initial design and engineering of the subject model GPWS.

15. All documents concerning any alternative design for the subject model GPWS which Honeywell considered in connection with the design, engineering, production and sale of the subject model GPWS.

16. All documents concerning the component parts or material lists for the subject model GPWS.

17. All Advisory Circulars and Airworthiness Directives issued by the U.S. Federal Aviation Administration and all general information letters, service information letters, quality assurance alerts, service bulletins, alert service bulletins, operator letters, service advisories, technical advisories and similar documents issued by Honeywell concerning the subject model GPWS.

18. The customer list used by Honeywell in the communication of those documents set forth in paragraph 17 above.

19. All documents concerning the testing, inspection and quality control of the subject model GPWS and a certain MKII GPWS or Ground Proximity Warning Computer (GPWC), serial number 2689 (the subject GPWS).

20. All documents concerning the Failure Mode Effect Analyses or other tests which were performed concerning the subject model GPWS to obtain type certification from the U.S. Federal Aviation Administration for the subject model GPWS.

21. The original and all supplemental type certificates and all lists of such type certificates and supplemental type certificates issued by the U.S. Federal Aviation Administration for the subject model GPWS.

22. All type certificates and supplemental type certificates for a flap override switch and/or flap logic switch used in connection with the subject model GPWS or for the interfacing, interrelation or integration of a flap override switch and/or flap logic switch with the subject model GPWS.

23. All documents concerning the Master Test Plan for the subject model GPWS, including, but not limited to, functional test procedure, acceptance test procedure, functional and acceptance test equipment requirements, functional and acceptance test equipment design, engineering release change requests for functional and acceptance test equipment, and engineering release change orders for functional and acceptance test procedures.

24. All documents concerning the manufacture, assembly and production of the subject model GPWS and the subject GPWS, including, but not limited to, the material parts list, mechanical and electrical release drawings and production assembly drawings.

25. All subcontract scope of work documents supporting the subject model GPWS, including, but not limited to, in-house and subcontract test procedures for all subcontracted items.

26. All documents concerning the sale of the subject GPWS.

27 All documents concerning the installation of the subject GPWS into the subject accident aircraft.

28. All documents concerning the maintenance, repair, alteration or modification of the subject GPWS.

29. The Owners Manual, Operators Manual and Users Manual for the subject model GPWS and all supplements and revisions thereto.

30. The Maintenance and Repair Manual, Overhaul Manual, Component Overhaul Manual, Component Maintenance Manual, and Installation Manual for the subject model GPWS and all supplements and revisions thereto.

31. All documents concerning the specifications for the subject model GPWS provided by Honeywell to any person or entity and all supplements and revisions thereto.

32. All those supplements to, or parts of, any Aircraft Flight Manuals or Flight Crew Operating Manuals concerning the subject model GPWS.

33. All documents provided by Honeywell to any aircraft manufacturer or operator concerning the subject model GPWS for use by that manufacturer or operator in preparing its Aircraft Flight Manual and/or Flight Crew Operating Manual.

34. All documents concerning any advice, instructions and warnings from Honeywell to any user or operator of the subject model GPWS concerning the subject model GPWS, the safe use of that product, or the necessary or suggested maintenance, repair or modification of that product.

35. All documents concerning any misuse, abuse, alteration or improper or inadequate maintenance, repair or modification of the subject GPWS after its sale.

36. All documents concerning the modes of operation and the operating limits for the subject model GPWS and concerning the conditions for which the subject model GPWS provides aural/and or visual warnings or alerts.

37. All documents concerning any communications by and between any employees, agents, attorneys or representatives of Honeywell and by and between Honeywell and any other person or entity regarding:

a. The design, engineering, production, manufacturing, assembly, testing, quality control, certification, and sale of the subject model GPWS and the subject GPWS,

b. The operation and use of the subject model GPWS and subject GPWS,

c. The troubleshooting, maintenance, repair, alteration and modification of the subject model GPWS and subject GPWS,

d. The useful life expectancy, design life expectancy, anticipated Mean Time Between Failures, termination life and overhaul life of the subject model GPWS,

e. The installation of the subject model GPWS and subject GPWS into an aircraft and the interfacing, interrelation and integration of the MKII GPWC with the subject model GPWS and subject GPWS.

f. The performance of the subject GPWS or subject model GPWS on the accident aircraft,

g. The subject crash, the possible cause or causes of the subject crash, and the investigation of the subject crash.

38. All schematics for, and all other documents concerning, the test equipment and test procedure used in the subject model GPWS hardware simulation described in the report of Kenneth Orloff in that prior litigation by certain plaintiffs against Hamilton

Sundstrand Corp. and known as *Wilson v Sundstrand* and in any other hardware simulations by Honeywell concerning the performance of the subject model GPWS or subject GPWS during the accident flight.

39. All documents concerning any communications by and between Honeywell, Airbus, P.T. Garuda Indonesia, the Republic of Indonesia, the United Kingdom, Australia France, and the United States, or any department, agency, employee, agent, attorney, official or representative of such countries, regarding:

      a. the subject model GPWS or subject GPWS

      b. the performance of a subject model model GPWS or the subject GPWS during the subject accident flight,

      c. the subject crash, possible cause or causes of the subject crash and the investigation of the subject crash

40. All documents concerning the subject crash, the possible cause or causes of the subject crash, the investigation of the subject crash, the collection, retrieval, storage or disposal of any system or component part or wreckage of the subject accident aircraft subsequent to the subject crash, and the inspection, testing or analysis of any system, component part or wreckage of the subject accident aircraft.

41. All documents concerning the operation, functioning and performance of a subject model GPWS or the subject GPWS during the subject accident flight, including, but not limited to any simulation of such performance.

42. The vox code or source code for the software simulations of the operation, functioning and performance of the subject model GPWS during the subject accident flight performed by, or at the direction of, Honeywell.

43. All flight recorder data for the subject accident aircraft during the subject accident flight, including, but not limited to, all data concerning the aircraft's pitch, roll and other movements.

44. All news articles, photos, topographical charts or maps, world aeronautical charts, "Russian charts," digital terrain data bases, and other materials collected, consulted, referred to, reviewed or considered by Honeywell in connection with the subject crash and all topographical maps depicting any portion of the area of the crash site within a 50 km radius of the crash site.

45. All sketches of the flight path, ground path and distance to impact of the subject flight, terrain profile and position of the crash site, photos of the terrain at or around the crash site, and sketches purporting to show what warnings or alerts would have been given during the subject flight by an Enhanced Ground Proximity Warning System shown by C. Donald Bateman to Airbus or any employee, agent, attorney or representative thereof.

46. All photos of the crash site, aircraft wreckage and other photos provided by Jeremy Barnett to C. Donald Bateman or any other employer, agent, attorney or representative of Honeywell.

47. All photos, films or videotapes of the subject accident aircraft taken on any date prior to September 26, 1997 and all photos, films or videotapes of the subject accident aircraft or subject aircraft wreckage taken on a date subsequent to September 26, 1997.

48. All pieces of the wreckage of the subject accident aircraft.

49. All documents which indicate that the subject GPWS or any subject model GPWS was not installed and functioning on the subject accident aircraft during the subject accident flight.

50. All documents which indicate that the subject GPWS or a subject model GPWS was installed and functioning on the subject accident aircraft during the subject accident flight.

51. The Company Certificate and Company By-Laws, as defined in Agreement and Plan of Merger Among United Technologies Corporation, HS Sail, Inc. and Sundstrand Corporation, any indemnification agreements as described in Article 6.8 of that Agreement and the indemnification provisions in the Certificate of Incorporation and By-Laws of HS Sail, Inc. (Surviving Corporation) as described in Article 6.8 of that Agreement.

52. All course materials of any kind prepared by or used in connection with classes or meetings by Honeywell with actual or potential customers, operators or others concerning the subject model GPWS and a list of all speakers and attendees at such classes or meetings.

53. The memo dated 30 September 1985 from Don Bateman to Bill Rahr and the memo dated 14 January 1982 from Don Bateman to Lou Donaty concerning the subject model GPWS.

54. The current version of, and all revisions since September 26, 1997 to, that document entitled "CFIT Accident Statistics" prepared by C. Donald Bateman.

55. All materials from the Sixth Flight Safety Conference received or reviewed by Honeywell or any employee, agent, attorney or representative thereof.

56. All documents concerning any travel by Honeywell to provide technical assistance or customer support to P.T. Garuda Indonesia regarding the subject model GPWS or subject GPWS from January 1, 1980 through September 26, 1997.

57. All documents concerning any reports of an alleged failure of the subject GPWS to operate within its actual or alleged limits.

58. A complete organization chart for Sundstrand Data Control, Sundstrand Corp., Allied Signal Co., and Honeywell, Int'l from the date work first began on the design of the subject model GPWS to September 26, 1997.

59. A complete organization chart for Allied Signal Co. and Honeywell, Int'l from September 26, 1997 to the present.

60. All documents concerning reports to Honeywell from any person or entity stating that the subject model GPWS was providing false or nuisance warnings and Honeywell's investigation of, and responses to, such reports.

61. All documents concerning the useful life expectancy, design life expectancy, Mean Time Between Failures and termination life and overhaul life of the subject model GPWS.


_____
Floyd A. Wisner
Attorney for Plaintiffs


Floyd A. Wisner
Wisner Law Firm
934 S 4th St
St Charles, IL 60174
(630) 513-9434

## Certificate of Service

The undersigned attorney certifies that he served a copy of Plaintiff's Request to Produce upon counsel for defendant by placing a copy in the U.S. mail at St Charles, IL on July 14, 2008.

Lloyd A. Wisner

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ELLA MANDELA DWI MUSTIKA, Special Administrator of the Estate of Achmad Chotib Syamsur, deceased, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 2178 |
| -v- | ) ) ) | |
| HONEYWELL, INTERNATIONAL, a corporation, | ) ) ) ) | |
| Defendant. | ) | |

### JOINT INITIAL STATUS REPORT

1.   **The Nature of the Case**.

    A.   **Identify the attorneys of record for each party, including the lead trial attorney**.

| Attorney for Plaintiff: | Attorneys for Defendant: |
|---|---|
| Floyd A. Wisner, Esq. | William F. DeYoung, Esq. |
| Wisner Law Firm | Loretto M. Kennedy, Esq. |
| 934 S. 4th St. | Mark A. Stang, Esq. |
| St. Charles, IL 60174 | Kendall E. Woods, Esq. |
| (630) 513-9434 | Chuhak & Tecson, P.C. |
| | 30 S Wacker Drive, 26th Floor |
| | Chicago, IL 60606 |
| | (312) 444-9300 |

    B.   **State the basis for federal jurisdiction**.

Plaintiffs claim the Court's jurisdiction is based on diversity of citizenship. However, defendant maintains that this action's jurisdiction is premised upon multi-party, multi-forum jurisdiction.

    C.   **Describe the nature of the claims asserted in the complaint and any counterclaims**.

Fifty-five plaintiffs have filed a joint one count complaint against defendant, Honeywell International Inc., pursuant to the Illinois Wrongful Death Act arising out of the crash of Garuda Flight GA-152 near Medan, Indonesia on September 26, 1997.

D.    **State the major legal and factual issues in the case.**

Defendant state that the major legal issues in this matter include whether plaintiffs have capacity to bring these claims; whether a ground proximity warning computer ("GPWC") was on the accident aircraft; whether a GPWC was operating on the subject aircraft and whether defendant had the duties or breached the purported duties claimed by the plaintiffs.

Plaintiffs state that these matters are not in issue.

E.    **Describe the relief sought by the plaintiffs.**

Plaintiffs are seeking compensatory damages.

2.    **Pending Motions and Case Plan**

A.    **Identify all pending motions.**

There are currently two motions pending before this court:

1.    Hamilton Sundstrand Corporation's Motion for Consolidation and Reassignment[1]; and

2.    Honeywell International Inc.'s Motion to Strike and Dismiss the Complaint which is set for initial presentation on July 16, 2008.[2]

---

[1]    On June 6, 2008, Hamilton Sundstrand Corporation removed the action entitled *Sumiati v. Hamilton Sundstrand Corporation*, No. 04-L-13895, and all consolidated actions from the Circuit Court of Cook County, Illinois, Law Division, to the United States District Court for the Northern District of Illinois, Cause No. 08-CV-3289. Defendant states that the removed *Sumiati* action involves 51 of the same plaintiffs and the same Garuda Flight 152 occurrence as those presented in the *Mustika* action. On June 9, 2008, Plaintiffs filed a Motion to Remand the consolidated *Sumiati* action back to the Circuit Court of Cook County. Judge Hibbler continued hearing on this motion to July 17, 2008.

[2]    Plaintiffs state this motion was not discussed at the parties' conference.

B.    <u>**Submit a proposal for a discovery plan, including the following information**</u>:[3]

Defendant states that at the recent conference the parties had discussed and agreed that specific fact discovery deadlines should not be imposed until the court has ruled on the pending motions, particularly those relating to consolidation and remand. Defendant states Plaintiffs no longer agree with that approach and now propose that discovery deadlines should be imposed immediately as to the *Mustika* action. Plaintiffs state they did not agree at the parties' conference that discovery deadlines should not be imposed until the court has ruled on the pending motions. Plaintiffs propose that discovery deadlines should be imposed immediately as to the *Mustika* action.

i.    <u>**The type of discovery needed**</u>;

Defendant states: Written and oral discovery regarding plaintiffs' capacity to bring these claims and plaintiffs' damages will need to be conducted. Damages discovery with respect to these same plaintiffs had been ongoing in the *Sumiati* action prior to its removal to the United States District Court for the Northern District of Illinois. By agreement the parties had initially focused solely on damages discovery. Prior to the removal of the *Sumiati* action, Defendant was able to complete depositions of some plaintiffs in the *Sumiati* action. Factual written and oral discovery as to the product and whether the product was on or operating on the subject aircraft had been initiated in the Sumiati action and will need to be conducted and completed.

---

[3]    Plaintiff may wish to have the number of allowed interrogatories increased.

Plaintiffs state: Written and oral discovery will be needed concerning the defects in the subject product, defendant's knowledge of the defects, and defendant's failure to correct or warn of the defects, among other liability issues. Plaintiffs state the parties in the Sumiati action were not focused solely on damages discovery at the time defendant removed those consolidated actions to federal court. Plaintiffs' state written and oral discovery on liability had been noticed by plaintiffs in the Sumiati action before defendant's removal of those actions to the federal court.

The parties agree that once the factual discovery has been completed, it is anticipated that expert discovery as to damages and liability will need to be completed.

ii.    **A date for Rule 26(a) (1) disclosures;**

Plaintiffs state they have made the required Rule 26 disclosures in correspondence dated July 2, 2008 directed to defendant's counsel. Defendant states Plaintiffs' correspondence references discovery which was completed in the *Sumiati* action (which is also brought on behalf of 51 of the *Mustika* plaintiffs) as well as other litigation which arose from the Garuda 152 occurrence.   Defendant states it is in the process of completing Rule 26(a) (1) disclosures.

iii.    **A fact discovery completion date;**

Defendant states that at the recent conference the parties discussed and had agreed that specific discovery deadlines should not be imposed until the court has ruled on the pending motions, particularly those relating to

-4-

consolidation and remand. Defendant states Plaintiffs no longer agree with that approach and now propose that discovery deadlines should be imposed immediately as to the *Mustika* action. Defendant continues to propose that the Court forgo the imposition of fact discovery cut-offs until after the Court has ruled on the pending motion. Plaintiffs state they did not agree at the parties' conference that discovery deadlines should not be imposed until the Court has ruled on pending motions. Plaintiffs propose that discovery deadlines should be imposed immediately as to the *Mustika* action. With respect to specific scheduling, the parties' proposals are as follows:

Plaintiffs propose: Factual written discovery be completed in 2 months and that oral non-expert discovery can be completed 4 months after that.

Defendant proposes: Factual written discovery be completed 3 months after resolution of motions regarding where the cases arising out of the Garuda 152 accident will be litigated. Defendant proposes oral non-expert discovery be completed within six months after the motions regarding the litigation location are resolved.

iv.   **An expert discovery completion date, including dates for the delivery of expert reports;**

Plaintiffs propose: Expert discovery can be completed 3 months after the close of non-expert discovery. Plaintiffs propose that the parties simultaneously exchange expert reports.

Defendant proposes: Plaintiffs provide expert reports within 30 days after the close of fact discovery and that Plaintiffs' experts be presented for

-5-

deposition 45 days after production of plaintiffs' experts' reports. Defendant further proposes that Defendant provide expert reports within 30 days after the completion of plaintiffs' experts' depositions and that Defendant's experts be presented for deposition within 45 days after providing plaintiffs with defendant's experts reports.

v.  **A date for the filing of dispositive motions**;

The parties propose that dispositive motions can be filed with 30 days of the completion of expert discovery.

vi.  **A date for the filing of a final pretrial order**.

The parties propose that the final pretrial order be completed 2 months after the Court's rulings on dispositive motions with plaintiff to provide a draft pretrial order to defendant 21 days before the pretrial order is due, with defendant to reply within 7 days.

C.  **With respect to trial, indicate the following**:

i.  **Whether a jury trial is requested**;

The parties request a trial by jury.

ii.  **The probable length of trial**;

Plaintiffs believe trial of this matter may be completed in three weeks.

Defendant believes that trial of this matter may be completed in six to eight weeks.

iii.  **When the case will be ready for trial**.

Plaintiffs believe this matter will be ready for trial in 1 year.

Defendant believes this matter will be ready for trial in 1.5 – 2 years.

3.    **Consent to Proceed Before a Magistrate Judge**

    A.    **Indicate whether the parties consent unanimously to proceed before a Magistrate Judge.**

        The parties do not consent to proceed before a magistrate at this time.

4.    **Status of Settlement Discussions**

    A.    **Indicate whether any settlement discussions have occurred;**

        There have been no settlement discussions.

    B.    **Describe the status of any settlement discussions;**

        N/A

    C.    **Whether the parties request a settlement conference.**

        Plaintiff does not request a settlement conference at this time.

/s/ Floyd A. Wisner

Attorney for Plaintiffs

Wisner Law Firm
934 S. 4th St.
St. Charles, IL 60174
(630) 513-9434

/s/ Loretto M. Kennedy

One of the Attorneys for Defendant
HONEYWELL INTERNATIONAL INC.

William F. DeYoung
Loretto M. Kennedy
Mark A. Stang
Kendall E. Woods
CHUHAK & TECSON, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 444-9300

781027\1\14158\26934

STATE OF ILLINOIS )
                  ) ss:
COUNTY OF COOK    )

## AFFIDAVIT OF SERVICE

I, Loretto M. Kennedy, state that I caused a true and correct copy of **Joint Initial Status,** a copy of said motion having been simultaneously served upon the parties, to be served via the CM/ECF system, which will send notification of such filing to all parties listed as attorneys of record, at or before 5:00 p.m. on the 11th day of July, 2008, upon the following counsel of record:

Floyd A. Wisner, Esq.
Wisner Law Firm
934 S. 4th St.
St. Charles, IL 60174
Telephone: (630) 513-9434
Facsimile: (630) 513-0716


/s/ Loretto M. Kennedy

778312\1\14158\26934